Jim WILCOX, Plaintiff-Appellant,

v.

**CLINCHFIELD RAILROAD COMPANY and International Mineral and Chemical Corporation, Defendants-Appellees.**

No. 83–5489.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 25, 1984.

Decided Nov. 5, 1984.

Rehearing and Rehearing En Banc Denied Dec. 21, 1984.

Gary L. Goldstein (Lead) (argued), Howell H. Sherrod, Jr., Sherrod, Stanley & Goldstein, Johnson City, Tenn., for plaintiff-appellant.

Ferdinand Powell, Jr., Johnson City, Tenn., Thomas J. Seeley, Jr. (Lead) (argued), Erwin, Tenn., for Clinchfield R. Co.

William C. Bovender (Lead) (argued), Edwin L. Treadway, Kingsport, Tenn., for Int'l Chemical.

Before EDWARDS and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.

Plaintiff Wilcox filed the instant actions seeking recovery for injuries he suffered in a fall on June 17, 1980, while climbing off a railroad car owned by defendant Clinchfield Railroad Company. At the time he was a brakeman employed by Clinchfield. The accident occurred on property owned by defendant International Mineral and Chemical Corporation (IMC). IMC manufactures a high grade of sand used in glass making and Clinchfield services the IMC plant at Spruce Pine, North Carolina where Wilcox's accident occurred.

Wilcox's accident occurred when he stepped off a stationary railroad car onto a sand covered walkway. The sand, which formed a 1½ inch ridge at the point of his dismount, gave way causing Wilcox to fall backwards into a boxcar. There is no dispute that he used the proper dismounting procedure and the District Court so found. Wilcox sustained injuries to his ankle, requiring surgery and six months in a cast, and to his neck, requiring surgery to reset a neck muscle. He was subsequently diagnosed as suffering from "thoracic outlet syndrome" and has a 15% permanent disability.

Wilcox's cause of action against Clinchfield is based on the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 (1982). He alleged that Clinchfield had failed to provide him with a reasonably safe place to work. He also asserted a cause of action against IMC based on negligence under

North Carolina law alleging that IMC had violated the duty it owed as the landowner to a business invitee such as Wilcox.

The case was tried to a jury on the Federal Employers' Liability Act claim against Clinchfield and the negligence claim against IMC.

During the jury deliberations, the jury submitted two disputed questions to the judge, one was whether the plaintiff received medical expenses, the other was whether plaintiff was paid for his "last working time."[1] The District Judge indicated to counsel how he proposed to answer these questions, to which the plaintiff objected and suggested answers of his own. The court, however, proceeded to tell the jury that plaintiff had received payment for medical expenses and "last time worked." Shortly thereafter, the jury returned a verdict in favor of both defendants.

On appeal, plaintiff's counsel argues that these instructions are reversible error. Under the authority of what we believe to be firmly established law, we now reverse for a new trial.

In *Eichel v. New York Central Railroad*, 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963), the Supreme Court in a Per Curiam opinion held as described in the headnote:

> In this suit by petitioner under the Federal Employers' Liability Act to recover damages for a permanently disabling injury resulting from respondent's negligence, the jury returned a verdict of $51,000 for petitioner, and the District Court entered judgment accordingly. The Court of Appeals reversed on the ground that the District Court had committed prejudicial error in excluding evidence that petitioner was receiving a disability pension of $190 per month under the Railroad Retirement Act of 1937. *Held:* The District Court properly ex-

cluded the evidence of disability payments.

*Id.* at 253, 84 S.Ct. at 316.

In the text of the opinion, the Supreme Court said:

> Respondent does not dispute that it would be highly improper for the disability pension payments to be considered in mitigation of the damages suffered by petitioner. Thus it has been recognized that:
>
> > "The Railroad Retirement Act is substantially a Social Security Act for employees of common carriers.... The benefits received under such a system of social legislation are not directly attributable to the contributions of the employer, so they cannot be considered in mitigation of the damages caused by the employer." *New York, N.H. & H.R. Co. v. Leary*, 204 F.2d 461, 468 [1 Cir., 1953], cert. denied, 346 U.S. 856 [79 S.Ct. 71, 98 L.Ed. 370] (Footnote omitted)

*Id.* at 254, 84 S.Ct. at 317.

Further in the same opinion, the Supreme Court said:

> We have recently had occasion to be reminded that evidence of collateral benefits is readily subject to misuse by a jury. *Tipton v. Socony Mobil Oil Co., Inc.*, 375 U.S. 34 [84 S.Ct. 1, 11 L.Ed.2d 4]. It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact. We hold therefore that the District Court properly excluded the evidence of disability payments. Accordingly, the judgment of the Court of Appeals is reversed and the case remanded for proceedings consistent with this opinion. (Footnotes omitted).

Id. at 255–256, 84 S.Ct. at 317.

In *Tipton v. Socony Mobile Oil Co.*, 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963), the Supreme Court said:

> really whether plaintiff was paid for his *"lost working time."*

---

**1.** Plaintiff-appellant contends that in the context of the evidence, the question from the jury was

At the trial before a jury, the District Court admitted evidence, over the objection of petitioner's counsel, that petitioner had accepted compensation benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, as applied through the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* The latter Act, although extending longshoremen's compensation to a new group, is explicitly inapplicable to a "member of a crew of any vessel." 43 U.S.C. § 1333(c)(1). In response to a special interrogatory the jury found that the petitioner was not a seaman or member of a crew of a vessel within the meaning of the Jones Act. Judgment was then entered upon the verdict for the respondent. The Court of Appeals for the Fifth Circuit unanimously held it error to have admitted the evidence of other compensation benefits but, with one judge dissenting, found the error harmless. We grant the petition for a writ of certiorari and vacate the judgment.

We do not agree that on the record in this case the error may be regarded as harmless. There can be no doubt that the evidence of other benefits was pressed upon the jury. Throughout the trial respondent's counsel emphasized that the petitioner "has a remedy under a federal compensation act, and in fact received benefits in the form of weekly payments under that act . . . ." The only argued relevance of this evidence was that it indicated what the petitioner had thought to be his legal status. (Footnotes omitted).

*Id.* at 34–35, 84 S.Ct. at 2.

Subsequently in the same opinion, the Supreme Court said:

A subsequent exchange between the judge and jury did not, in our opinion, negate the cumulative impact of the evidence and the instructions. The jury, while deliberating, sent the following note to the judge:

"If we find Mr. Tipton is not a seaman or a member of the crew of drilling barge No. 1, does he have recourse for compensation under the Outer Continental Shelf or other act?"

The judge immediately replied:

"This is not a matter for the jury's consideration. You should consider only the questions submitted and the evidence thereon."

The petitioner contends, correctly we think, that this reply was insufficient to overcome the impact of the evidence of other compensation as submitted to the jury. Although the judge's reply excluded from the jury's consideration the availability of alternative benefits in a future action, it did not preclude or restrict consideration of the evidence presented concerning prior receipt of compensation payments. The direction to consider "the questions submitted" was not illuminating and the further reference to "the evidence thereon" necessarily encompassed the admitted evidence of payments received and retained by petitioner. (Footnotes omitted).

*Id.* at 36, 84 S.Ct. at 3.

While these cases, of course, are not exactly in point factually with our instant case, they do indicate the strength of the legal rulings which prohibit a defendant from showing collateral benefits which an injured party may have received which might influence a jury in adversely determining the issue of liability.

In our instant case, we do not find any explanation of the inapplicability of the collateral benefits or any mitigation of the prejudicial effect of the two questions and the judge's answers here involved.

The jury's questions and the answers by the trial judge came during the second day of jury deliberations in this case. The jury verdict followed very shortly thereafter. Like our colleagues in the Fifth Circuit in *Page v. St. Louis Southwestern Railway Co.*, 349 F.2d 820, 822 (1965), we find no substantial basis "for distinguishing this case from *Eichel* and *Tipton*." The Fifth Circuit opinion continued:

Both *Tipton* and *Eichel* reflect a strong policy against the use of such collateral source evidence in FELA and

analogous Jones Act-maritime law seamen's cases. With the whole result in our case being the enigma wrapped in the mystery of a general verdict concealing forevermore the use or uses to which the jury might have put this evidence, we cannot say that the error, preserved by emphatic and timely objection, was harmless.

The judgment of the District Court is therefore vacated and the case is remanded for new trial.