992 F.2d 1217
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kenneth Ray RUTLEDGE, Sr., and Jennie S. Rutledge,
Plaintiffs-Appellants,
v.
NAPCO, INC., and Thermo-Electron, Inc., Defendants-Appellees,
and
NI INDUSTRIES, INC., and Masco Industries, Intervening Plaintiffs,
v.
NAPCO, INC., and Thermo-Electron, Inc., Intervening Defendants.
 No. 92-5250.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1993.
 
 Before JONES and GUY, Circuit Judges, and COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs, Kenneth Rutledge, Sr., and Jennie Rutledge, appeal a jury verdict in favor of defendants, Napco, Inc. and Thermo-Electron, Inc., in this products liability action. Plaintiffs raise the following allegations of error: (1) the district court excluded certain evidence regarding other accidents or injuries; (2) the district court excluded evidence of defendants' products safety program; (3) the district court allowed expert testimony from a witness not identified in discovery as an expert; (4) the Kentucky rule allowing the admission of evidence concerning collateral source payments in civil trials is violative of both the United States and the Kentucky Constitutions; and (5) even if no state or federal constitutional violation occurred, the district court should have applied the Federal Rules of Evidence instead of the Kentucky rule and excluded evidence of collateral source payments as prejudicial. We affirm.
 
 I.
 
 2
 This is a products liability action brought by the Rutledges against defendants Napco, Inc., and its parent company, Thermo-Electron, Inc., for personal injuries and loss of consortium caused by an allegedly defective Napco Return Type Automatic Processing Machine (RTM). The RTM was installed by Napco at the plant where Kenneth Rutledge, Sr., was employed, NI Industries of Nicholasville, Kentucky.
 
 
 3
 The RTM is a transport mechanism used to move baskets of parts along a belt chain and to dip each basket in a series of electrically-charged baths, causing them to be electroplated. During the time that the baskets are in the baths, the machine's moving parts are still.
 
 
 4
 On October 14, 1988, Mr. Rutledge was injured when attempting to make an adjustment to one of the pickup arms on the RTM while it was energized and operational. The loader mechanism apparently began to move in the wrong direction without warning, crushing him. He then fell 12 to 15 feet to the floor, suffering further injury.
 
 
 5
 The Rutledges filed suit against Napco and Thermo-Electron in federal court, advancing theories of negligence, defective design, and failure to warn. Federal jurisdiction was premised on diversity of citizenship pursuant to 28 U.S.C. § 1332. Judgment in favor of defendants was entered following a jury trial held in December of 1991.
 
 II.
 
 6
 The Rutledges contend that the district court erred in granting defendants' motion in limine to exclude evidence of other accidents or injuries related to Napco-manufactured electroplating machines.
 
 
 7
 Specifically, the Rutledges hoped to introduce evidence concerning an injury that occurred in 1980 in Florida on a machine which they acknowledge was not a model similar to the RTM at issue in the instant case. After reviewing the materials offered by the parties concerning the two accidents, the court found as follows:
 
 
 8
 The alleged dangerous condition in the present case is the absence of a guard which would preclude an employee's access to an area of the machine where there are moving parts. It appears that the "area of the machine" involved in the prior accident in Florida is a different "area of the machine" than that involved in the present action. Since the question in the present action is whether the machine was in a defective and unreasonably dangerous condition because of the absence of such a guard in the "area of the machine" in question, the Magistrate Judge believes that evidence regarding the absence of a guard at a different "area of the machine" is irrelevant.
 
 
 9
 (App. 285). Accordingly, the district court sustained defendants' motion.
 
 
 10
 We review the exclusion of evidence concerning prior accidents under an abuse of discretion standard. Polk v. Yellow Freight Sys., Inc., 876 F.2d 527, 532 (6th Cir.1989). Under this standard
 
 
 11
 "the relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place, but rather, whether any reasonable person could agree with the district court."
 
 
 12
 Rye v. Black & Decker Mfg. Co., 889 F.2d 100, 101 (6th Cir.1989) (quoting Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556, 563 (7th Cir.1984) (emphasis in original)).
 
 
 13
 In the Florida incident, the machine involved had an overhead hoist located over the electroplating baths. The employee was put at risk of injury from the baths below him when he attempted to adjust the loader mechanism. In the instant case, the RTM was designed with a carousel hoist, and the loader mechanism could be adjusted from underneath the machine on the open floor. There were also differences in the safety features built into the two machines. Additionally, there was no indication that the injured employee in Florida and Mr. Rutledge received similar safety-related training. As the conditions underlying the two accidents so differed, the district court could have properly found that they did not occur under "substantially similar" circumstances. See, e.g., Koloda v. General Motors Parts Div., General Motors Corp., 716 F.2d 373, 376 (6th Cir.1983).
 
 
 14
 The Rutledges, however, suggest that the district court's ruling failed to account for all of the common defects which allegedly inhered in the two machines. According to them, both machines have a "dwell component"--they were designed to stand idle for long periods of time and then suddenly start up. As a result, their operators are allegedly lulled into a sense of security if they engage in maintenance while the machines are still running. The Rutledges argue that the district court erred in refusing to allow them to introduce evidence regarding the Florida incident to show that defendants had knowledge of the "seductive qualities of their machinery" prior to Mr. Rutledge's accident. (Pltfs' Brief at 10).
 
 
 15
 Even assuming, arguendo, that the district court should have allowed evidence of the Florida incident for such a purpose, its failure to do so would constitute harmless error.
 
 
 16
 Substantial evidence was presented at trial that Mr. Rutledge understood how the RTM functioned and was not in fact "seduced" by an alleged "dwell component" of which he was unaware. Mr. Rutledge testified that he had worked on the loader mechanism "dozens of times." (App. 354). He knew that the mechanism would be idled for 30 to 45 seconds during the electroplating process, after which time it would begin to move. He also knew that the mechanism moved in different directions and that, if an individual were in its path as it progressed towards the stationary part of the machine, he would be injured. We are convinced as a result that, had the jury been provided with information concerning the Florida incident, it would not have reached a different result in the instant case. The Rutledges' contention is therefore without merit.
 
 III.
 
 17
 The Rutledges next contend that the district court erred in excluding evidence related to defendants' products safety program.
 
 
 18
 In May of 1985, the Travelers Insurance Companies presented a products safety program for the benefit of Napco. Representatives of Travelers, Napco, and Thermo-Electron subsequently met and corresponded in an effort to assess defendants' exposure to liability in light of Travelers' hazard analysis. Defendants sought to exclude evidence concerning the products safety program, as well as any follow-up contact between Travelers and defendants, by way of a motion in limine.
 
 
 19
 The district court found that such evidence was
 
 
 20
 offered in support of the plaintiffs' claim of negligence by the defendants for not performing a "hazard analysis" on the machine in question. Pursuant to Federal Rule of Evidence 407, this evidence could only be introduced for purposes of "feasibility of precautionary measures, if controverted, or impeachment." Fed.R.Evid. 407. As this Safety Program did not come into existence until some five to six years after the machine in question was manufactured and installed, the Magistrate Judge finds that such evidence is too remote in time to have any probative value as to the feasibility of conducting a "hazard analysis" at the time the machine was manufactured or installed.
 
 
 21
 (App. 286.) As a result, the court granted defendants' motion.
 
 
 22
 We must affirm the district court's ruling on evidentiary matters unless the court abused its discretion. United States v. Mahar, 801 F.2d 1477, 1495 (6th Cir.1986). After reviewing the record, we are convinced that the court's disposition of defendants' motion was appropriate. An evaluation of product safety occurring several years after the manufacture of the RTM is irrelevant to the Rutledges' claim of defective design.
 
 
 23
 The Rutledges assert that the evidence regarding the products safety program also would have been used to show that defendants breached their duty to warn of known dangers related to the operation of the RTM. While this evidence may have been relevant to the Rutledges' duty-to-warn claim, its exclusion was harmless error. Defendants' representatives were questioned extensively about their awareness of potential hazards associated with use of the RTM. The excluded evidence would not likely have altered the jury's finding of no liability.
 
 IV.
 
 24
 The Rutledges next contend that the district court erroneously permitted Max Caldwell, the president of Napco, to give expert evidence when he had not been identified in discovery as an expert. As part of his examination of Caldwell, defendants' counsel asked him whether the RTM conformed to certain standards promulgated by the American National Standards Institute. The Rutledges' counsel objected, and the following conference was held out of the hearing of the jury:
 
 
 25
 THE COURT: What is your objection?
 
 
 26
 MR. MARSHALL [Plaintiffs' counsel]: I don't recall this man being identified as an expert witness. He's getting ready to testify to the application of an engineering standard to this machine. He wasn't identified in my interrogatory concerning experts. I don't know what this is about and I would object to it coming in.
 
 
 27
 MR. DUNCAN [Defendants' counsel]: I don't intend to proffer him as an expert on behalf of the machine. However, he is uniquely qualified because of his engineering training and his experience in the industry to give testimony that may be of a technical nature. I think as the company President, he is certainly entitled to say whether those standards apply to his machines and the significance of those standards to him as an engineer and in his capacity as President of NAPCO. That is really about all I intend to do with it.
 
 
 28
 THE COURT: Overruled.
 
 
 29
 (App. 408-09). The conference then concluded and defendants' counsel continued his questioning of Caldwell.
 
 
 30
 The record reveals that Caldwell was not qualified as an expert and that he never testified in such a capacity. The record also indicates that his subsequent testimony was not expert opinion mistakenly allowed by the court as lay evidence. It was predicated on his personal knowledge, as a corporate officer, of Napco's products and manufacturing history. The Rutledges' contention must be rejected.
 
 V.
 
 31
 In the instant case, the Kentucky collateral source rule, Kentucky Revised Statutes Annotated § 411.188(3), would only have had an impact upon the calculation of damages. As the jury found no liability, we need not consider whether such a rule violated the United States or the Kentucky Constitutions.[1] Likewise, it is not necessary to address whether evidence adduced at trial concerning collateral payments to Mr. Rutledge should have been excluded as prejudicial or irrelevant under the Federal Rules of Evidence.[2]
 
 
 32
 AFFIMRED.
 
 
 
 *
 Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 See, however, Birkenshaw v. The Union Light, Heat and Power Co., --- F.2d ----, No. 92-5395 (6th Cir. Mar. 9, 1993)
 
 
 [2]
 We recognize that there are instances in which evidence regarding collateral benefits may influence the jury's liability determination. See Eichel v. New York Central R.R., 375 U.S. 253 (1963); Tipton v. Scocony Mobil Oil Co., 375 U.S. 34 (1963). See also Wilcox v. Clinchfield R.R., 747 F.2d 1059 (6th Cir.1984). However, such is not the case here. We also note that, even without authorizing legislation, there are instances when collateral source evidence may be appropriate. For example, the defendant argues in the case at bar that certain collateral source evidence was relevant for impeachment purposes as to the period of disability