# United States Court of Appeals
## For the First Circuit

No. 11-1578

GEOFFREY CROWTHER,

Plaintiff, Appellant,

v.

CONSOLIDATED RAIL CORPORATION and CSX TRANSPORTATION, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael Ponsor, U.S. District Judge]

Before

Selya, Circuit Judge,
Souter, Associate Justice,[*]
and Lipez, Circuit Judge.

Thomas J. Joyce, III for appellant.
Andrew E. Tauber, with whom Paul W. Hughes, Mayer Brown LLP, Michael B. Flynn, Heather M. Gamache, and Flyyn & Wirkus, PC were on brief, for appellees.

May 18, 2012

---

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.** This is an appeal brought in consolidated negligence actions under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq., against the two railroad defendants by a former employee, Geoffrey Crowther, who held various laboring and supervisory positions over the course of 30 years. The claims in issue before us are for causing cumulative, or wear-out, injuries to the neck, knees, left elbow and thumb, and for accidental injury to the left forearm while driving a spike in 2005.

Crowther first filed separate actions for the cumulative injuries and for the accidental damage in the Pennsylvania County Court of Common Pleas on September 21, 2007, each of which was dismissed without prejudice and subject to an understanding, not disputed here, that any challenge to the timeliness of the claims, if renewed elsewhere, would be governed by the Pennsylvania entry date. Crowther filed a federal complaint in the district of Massachusetts for the wear-out injuries on March 5, 2009, together with separate claims for aggravation of physical conditions, not previously raised. Later in the same year, he filed a federal complaint for the accidental injury to the forearm. The district court granted defendants' motion for judgment as a matter of law as to most of Crowther's claims; those remaining were tried to defendants' verdicts.

In this appeal, Crowther assigns error to granting the defendants judgment as a matter of law (rejecting the neck and knee claims as untimely and the remaining claims insofar as they rested on alleged failures to perform ergonomic analyses of Crowther's activities or provide adequate tools), and to admitting evidence that Crowther was receiving disability benefits under the Railroad Retirement Act, 45 U.S.C. § 201 et seq.  We review the grants of judgment as a matter of law de novo, Cruz-Vargas v. R.J. Reynolds Tobacco Co., 348 F.3d 271, 275 (1st Cir. 2003), and the admission of collateral source evidence for abuse of discretion, McGrath v. Consol. Rail Corp., 136 F.3d 838, 841 (1st Cir. 1998).  We affirm on all issues.

The federal statute requires that FELA claims be brought within three years, 45 U.S.C. § 56, a period running from the date that a plaintiff knows or has reasonable grounds to know of an injury as caused by employment, Granfield v. CSX Transp., Inc., 597 F.3d 474, 482 (1st Cir. 2010).  Thus, in order to fall within the period for which suit is allowable, the wear-out injuries must have become identifiable as work-related on September 21, 2004, or later, and the aggravation injuries on or after March 5, 2006.  Crowther does not now contest the court's conclusion that the aggravation claims were untimely, appealing only the judgment at the close of the plaintiff's case of the action for neck and knee wear-out, which was based on findings by the court under Federal

Rule of Civil Procedure 50(a) that the evidence could not support a reasonable jury finding that Crowther sued while the three-year window was open.

As for the knees, the evidence included a 2007 medical questionnaire on which Crowther reported pain in the knees attributable to a fall at work in 1977; a separate physician's note, also from 2007, that Crowther had reported that his knees became painful in 2002 "probably due to overuse at work";[1] and a 1998 medical history form that recorded Crowther's claim of a "work injury" of a "bothersome" knee and back owing to a fall twenty years before. As against this evidence of injury and pain understood as related to his work, we have been directed to nothing but general testimony that Crowther had recovered from a past right knee injury and his knee pain was not continuous from 1992 to the time of trial. Just as significantly, Crowther directs us to no evidence to the effect that at some point within the limitations period he first had reason to associate knee pain with his railroad employment.

On the evidence, then, no fact-finder could reasonably have inferred that Crowther became aware of a work connection with his knee pain only after mid-September of 2004. Although Crowther

---

[1] It is undisputed that a 1986 x-ray of the right knee carried a doctor's note that Crowther had said he had injured the knee at work the previous day. But we have not found the note in any appendix to the briefs, or discovered any other access to it.

stresses at length that the cases construing a FELA plaintiff's right to get his case before a jury require not much more than a scintilla of evidence in plaintiff's favor on a disputed point, <u>see e.g.</u>, <u>Aparicio</u> v. <u>Norfolk & Western Ry. Co.</u>, 84 F.3d 803, 809-10 (6th Cir. 1996), <u>abrogated in part on other grounds by</u> <u>Reeves</u> v. <u>Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133 (2000), nothing but sympathy could obscure the apparent untimeliness of the knee claim here, and the Rule 50(a) judgment was undoubtedly correct.

The same is true as to the claim of neck injury. A physician's note from 2002 described Crowther as a railroad worker doing heavy work as a welder, complaining of right shoulder and arm pain and neck pain. Crowther testified, in a deposition, read into the record in his cross-examination, that the doctor "said whatever you're doing right now . . . . I would get away from it. Find something like a management job or something. . . . Dr. Bausten said, I recommend that you just, you know, whatever, you're welding, get away from it. So that's what I did." While Crowther took the position at trial that he did not perceive a work relation until later, we have been directed to only one direct comment on the prior deposition testimony, a reference to seeking the 2002 medical attention for carpal tunnel syndrome, and a vague statement responding to his lawyer's question about when he knew of work relation: "the whole thing with my [left] thumb, my [left] elbow and my neck was 2005." The trial judge was not exaggerating when

-5-

he remarked that he failed to see how counsel could argue with a straight face that Crowther did not know of his neck problem in 2002 and understand its possible relation to his work.

We likewise see no error in entering judgment as a matter of law on the negligence claims based on inadequate tools and failure to obtain ergonomic studies of the activities required to perform Crowther's various jobs. The only evidence that proper tools were lacking related to 2005, the year of the accidental forearm injury. As to that specific injury, the theory was submitted to the jury (and rejected), but was properly barred with respect to the wear-out injury claims for cumulative effects of continually negligent conduct: there simply was no evidence of a persisting failure to provide adequate equipment over time.

Unlike the tools claim, the claimed failure to conduct ergonomic studies of Crowther's job activities was raised only as a cause of the cumulative, wear-out injuries (and only against Consolidated Rail Corporation). While there is no question that Consolidated commissioned no such studies, this claim was rejected, quite properly, for the failure of Crowther's expert, or any other witness, to show how such studies would reasonably have made a difference in the way the railroad treated Crowther. His counsel has not called our attention to any evidence that job assignments or instructions for performing assigned work might have changed in light of any understanding that ergonomic studies would have

fostered. There is thus no indication of any basis for a jury to conclude that inattention to ergonomics caused any harm to Crowther.

Crowther's final assignment of error goes to the admission of evidence of malingering, which was relevant to his claim of loss from continuing disability attributable to the negligence of the railroads in causing chronic or wear-out injury to his left elbow and thumb, and to the negligence of CSX alone in causing the accidental injury to his left forearm while working on track in New Bedford. The two ensuing verdicts were special, not general, being findings of no negligence with respect to either wear-out or accident. Crowther argues that each should be set aside because the court granted a pretrial motion to allow the defendants to introduce evidence that Crowther was getting around $3,000 per month in disability benefits under the Railroad Retirement Act. The court thus refused to apply the rule against admitting evidence of a defendant's receipt of compensation for injury from a source collateral to the defendant. More specifically, Crowther says that admitting the evidence violated the holding in Eichel v. New York Cent. R.R. Co., 375 U.S. 253 (1963) (per curiam), which he reads as flatly precluding admission of collateral source evidence in trials of FELA claims like this one. We think, however, that under this circuit's holding in

<u>McGrath</u>, 136 F.3d 838, there was no error in allowing the jury to consider this evidence.

The collateral source rule is meant to guard against two risks: that after a jury has found liability and goes on to assess damages it will deduct from the appropriate award whatever compensation a plaintiff is receiving for injuries from a source other than a liable defendant (health insurance benefits, say), and the more general risk that a jury will regard the receipt of such benefits as a reason to avoid finding liability at all in a close case. <u>See</u> <u>id.</u> at 840. <u>Eichel</u> was a FELA case in which the rule was applied and explained in a <u>per curiam</u> opinion, prior to the adoption of the Federal Rules of Evidence. There was no question in that case that receipt of continuing benefits from a collateral source could be relevant, in showing both that the defendant was malingering in order to claim greater harm than he actually suffered and that he was failing to take the required steps to mitigate damages. But the Court reasoned that admission of such evidence raised a substantial likelihood of prejudicial impact, whereas in most cases there would be other evidence of any malingering, thus eliminating the justification for raising collateral source risks. The Court concluded by upholding a trial judge's exclusion of collateral source evidence. <u>Eichel</u>, 375 U.S. at 255.

While Eichel is generally regarded as laying down an unqualified rule against revealing a collateral source in a FELA case, see, e.g., Green v. Denver & Rio Grande Western R.R. Co., 59 F.3d 1029 (10th Cir. 1995); Wilcox v. Clinchfield R.R. Co., 747 F.2d 1059 (6th Cir. 1984), this circuit has read the per curiam opinion less globally as simply affirming the trial judge's discretionary judgment to exclude in that case (consistently with the current Federal Rule of Evidence 403, leaving a trial court with discretion to exclude otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice), McGrath, 136 F.3d at 841. Since we are bound by this panel decision in the absence of intervening and binding authority, we will apply McGrath and review for abuse of discretion, id. at 841, with deference being given to the trial court's weighting of the relative probative and prejudicial tendencies, Fitzgerald v. Expressway Sewerage Constr., Inc., 177 F.3d 71, 75 (1st Cir. 1999).

One of the prejudicial dangers posed by collateral source evidence may be put aside at the outset, the risk that a jury will offset actual damages by the amount of the benefits being paid. As mentioned, the verdicts were special findings of no negligence, eliminating any consideration of damages that could have been affected by the disputed evidence. The point would be the same, however, even if the verdict had been general. Although the judge took great pains to instruct the jury prior to Crowther's cross-

examination that he was entitled to the benefits he was receiving, and that they could not be subtracted from any award of damages the jury might otherwise make, Crowther turned around and asked the jurors to make the very offset the court's instructions had forbidden. As his counsel told the judge, he may well have taken this position to minimize the danger that the benefits evidence would distort the jurors' judgment on the issue of railroad negligence, but the fact remains that Crowther gave up the benefit of careful instructions against offset.

His claim of error subject to <u>McGrath</u> consequently boils down to whether letting in the evidence of benefits raised such an unjustifiable risk of swaying the jury's judgment on the issue of negligence itself as to amount to abuse of discretion even under a deferential standard. There is evidence pointing each way. As the Supreme Court surmised generally in <u>Eichel</u>, 375 U.S. at 255, malingering was an issue here quite independently of collateral source evidence. The jury learned that Crowther declined to avail himself of the retraining CSX provided for injured employees and his decision could not be interpreted as an act of hopeless resignation; the evidence showed that he customarily took a daily four-mile walk, went swimming five days a week and cycling three days, could lift a kayak, and go fishing and snowshoeing. This demonstration of reluctance to return to gainful work, combined with the showing of physical activity, certainly shot holes through

-10-

the disability claim and if considered in isolation would be a good reason to conclude that it was reversible error to admit cumulative collateral source evidence.

In the other direction, that threat was mitigated by the court's instructions. The court pointed out that "[a]n injured party is under a legal obligation to mitigate his damages; that is, to minimize the economic loss resulting from his injury by accepting and resuming gainful employment as soon as he reasonably can." The explanation was clear that the evidence of benefits was allowed in only as it might indicate whether Crowther had fulfilled his "obligation, if he's asking for compensation or damages to replace lost wages, to engage in whatever work he is capable of engaging in." And the court reminded the jurors that "the defendants bear the burden of proving a failure to mitigate on the part of plaintiff by a preponderance of the evidence."

But the more powerful reason showing that the discretionary ruling in favor of apprising the jury of the collateral benefits was ultimately reasonable is simply that Crowther's own testimony elevated the benefits evidence from merely circumstantial to a component of direct evidence of purposeful malingering. At a pretrial deposition, Crowther's counsel made it clear that the reason his client was not working was "because he is on a disability annuity . . . . That's why he is not working okay." At trial, prior to Crowther's testimony, counsel made the

-11-

same point, telling the judge that if Crowther worked he would lose his disability income. But it was during redirect examination by his own counsel that Crowther candidly confirmed what his counsel had earlier represented.

> Counsel: Is it your understanding that if you were working, that you would lose your disability from the Railroad Retirement Board?
> Crowther: Yes.
> Counsel: And that's the reason you're not working.
> Crowther: Yes.

This testimony is an admission of malingering, the most convincing possible evidence on this point, so powerful that its probative value, in light of the limiting instruction, could not have been substantially outweighed by the danger of any prejudice that could be called unfair.

We assume, of course, that Crowther would have seen no occasion to make such an admission if the court had not ruled the collateral source evidence admissible in the first instance, but it was his own (or his lawyer's own) choice to incorporate the fact revealed by that evidence into an avowal of the intentional malingering that the railroads sought to show. Thus, however we might analyze the merits of the pretrial ruling based on the information then before the judge, the evidence at trial demonstrated beyond serious question that the disclosure of collateral benefits did not place him under any disadvantage that the facts did not fully warrant.

-12-

**Affirmed.**