RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0321P (6th Cir.)
File Name: 02a0321p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

WILLIAM TOTH,
      *Plaintiff-Appellant,*

    *v.*

GRAND TRUNK RAILROAD,
d/b/a CN North America,
      *Defendant-Appellee.*

No. 01-1043

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-72412—Victoria A. Roberts, District Judge.

Argued: June 12, 2002

Decided and Filed: September 18, 2002

Before: BOGGS, SILER, and MOORE, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** Michael J. Leizerman, E.J. LEIZERMAN & ASSOCIATES, Toledo, Ohio, for Appellant. Gregory A. Clifton, DURKIN, McDONNELL, CLIFTON, DAVIS & O'DONNELL, Detroit, Michigan, for Appellee. **ON BRIEF:** Michael J. Leizerman, E.J. LEIZERMAN & ASSOCIATES, Toledo, Ohio, for Appellant. Mary C. O'Donnell, DURKIN,

McDONNELL, CLIFTON, DAVIS & O'DONNELL, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

  KAREN NELSON MOORE, Circuit Judge.  Plaintiff-Appellant William Toth appeals from a jury verdict in favor of Defendant-Appellee Grant Trunk Western Railroad ("GTW"), following a trial on Toth's claims under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*., and the Safety Appliance Act ("SAA"), 49 U.S.C. § 20302 *et seq*.  Toth's suit alleged that he was injured by a defective operating lever on a railroad car while he was working as a railroad conductor.  On appeal, Toth argues: (1) that the district court erred in denying his request for discovery sanctions; (2) that the district court improperly prevented him from presenting rebuttal evidence; (3) that the district court erred in refusing to take judicial notice of federal railroad safety regulations; (4) that the district court erred in instructing the jury on GTW's sole-proximate-cause defense; (5) that the district court erred in instructing the jury on the availability of alternate remedies; (6) that the district court improperly excluded evidence relating to damages; and (7) that the district court erred in allowing GTW's medical expert to testify about the contents of hearsay medical reports. For the reasons that follow, we **AFFIRM** the district court on all issues.

## I.  FACTS AND PROCEDURE

  On June 11, 1998, Toth filed suit against GTW, alleging claims under FELA and the SAA.  Toth's suit alleged that he was injured on July 25, 1995, while coupling a gondola-style[1] railroad car to a string of railroad cars at GTW's Flat Rock rail yard in Michigan.  According to Toth, the coupling lever

_____

[1] A gondola car is a variety of railroad car with an open top.

on the gondola car malfunctioned during this procedure, causing the lever to overextend and recoil against the face of the train car. Toth claims that his thumb was crushed as a result. After discovery, Toth's case went to trial, which resulted in a verdict for the defendant. Toth now appeals a number of pretrial and trial rulings of the district court.

## A. Discovery

Prior to trial, a number of disputes arose between the parties regarding discovery. The most significant of these related to defendant's production of records relating to the repair histories of the cars on Track 39, the track on which the accident occurred, on the day of the incident. Plaintiff's requests for this information were made in connection with interrogatories 22 and 23 of plaintiff's first set of interrogatories. These interrogatories and defendant's initial answers are as follows:

22. Identify and describe any demonstrative evidence known to you or in your possession or control relative to the allegations set forth in plaintiff's complaint or defenses asserted by defendant.
**Answer: First, it is unknown what plaintiff means by "demonstrative evidence" and by "possession and control." For example, plaintiff alleges injuries from a defective operating lever on a gondola car. Defendant knows it has possession and/or control over gondola cars, which would contain operative levers. Does plaintiff mean this? Defendant does not know. To date, *defense counsel* has in her *possession* all pleadings; plaintiff's medical/personnel/local files; medical and other records obtained through authorizations, plaintiff's deposition and exhibits.**
. . .
23. If an inspection was made of the equipment on which plaintiff was injured, prior to or as a result of the occurrence in suit, state the name, addresses, and titles of the persons making such inspections and . . . the

individual(s) who has custody and control of any such inspection records.

**Answer:  Plaintiff did not allege defective equipment requiring inspection on either 7/25/95 or in 2/96.**

Joint Appendix ("J.A.") at 92-93 (Defendant's Responses to Interrogatories at 9-10).  Plaintiff also made a request for "any such documents, reports, memos, etc., in Defendant's possession with regard to any inspection referred to in Interrogatory No. 23 above," in response to which defendant referenced its answer to interrogatory 23.  J.A. at 95.

On March 22, 1999, plaintiff's counsel sent a letter to counsel for GTW asserting that defendant's responses to interrogatories were deficient in a number of respects. Plaintiff specifically requested clarification on the responses to interrogatories 22 and 23, and the related document request.   After determining that GTW had not properly clarified its answers, plaintiff filed on April 13, 1999, a motion to compel with respect to its request for clarification. Before the district court ruled on plaintiff's motion, the parties resolved the dispute and the court entered an order deeming the motion to compel withdrawn.

Defendant submitted supplemental answers to plaintiff's interrogatories on June 12, 1999.  Defendant's supplemental answer to interrogatory 22 (demonstrative evidence) stated that "car history records" had been "requested, but [were] perhaps unlikely to be available given plaintiff's failure to identify a specific car or to cite a defect."  J.A. at 975. Defendant's supplemental response to interrogatory 23 (inspection records) stated that "Defendant was not able to perform a formal mechanical inspection due to plaintiff's failure to allege any defective equipment . . . . As to possible general inspection records which still exist, these have been requested."  J.A. at 975.

On November 14, 2000, plaintiff learned for the first time that GTW possessed a "switch list" — a listing of the cars that were present on Track 39 on the day of Toth's accident.

warranted by the trial judge's effort, in the heat of trial, to undo the damage resulting from the plaintiff's decision to test the limits of the pretrial order.

## E.  Exclusion of Evidence Concerning Damages

Toth finally objects to a number of the district court's evidentiary rulings on various topics relating to damages. Specifically, Toth argues:  (1) that the district court erred in excluding the testimony of Gary Meservy on the issue of malingering; (2) that the district court erred in precluding Toth from informing the jury that his health insurance had been canceled in order to explain his failure to mitigate damages; (3) that the district court erred in excluding evidence relating to Toth's claim that he developed Reflex Sympathetic Dystrophy ("RSD") as a complication resulting from his injuries; and (4) that the district court erred in allowing defendant's medical expert to comment on hearsay medical reports during his testimony concerning the extent of plaintiff's injuries.

We see no need to consider Toth's specific objections. Even if Toth is correct that the district court erred in excluding or admitting certain of the aforementioned evidence, any error would be harmless.  *See* FED. R. CIV. P. 61.  Toth's evidentiary objections relate solely to issues of damages.  The jury returned a special verdict form indicating that Toth had not proven negligence on GTW's part or the existence of a defect in the coupling mechanism.  As a result, the jury never reached the issue of damages.  Therefore, Toth could not have been prejudiced by the erroneous exclusion or admission of any evidence relating to damages.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

*Express, Inc.*, 923 F.2d 59, 60 (6th Cir. 1991); *see also United States v. Sharpe*, 996 F.2d 125, 128-29 (6th Cir.) (holding that error in jury instructions was invited), *cert. denied*, 510 U.S. 951 (1993). The comments in plaintiff's closing argument could have been interpreted by the jury as suggesting that the plaintiff's injury would go uncompensated if it returned a verdict for the defendant, and therefore were at least in tension with the pretrial order. We acknowledge that plaintiff's comments reasonably could be understood to suggest that this suit was his only chance to prove the truth of his story to a jury, rather than implying that no other source of monetary compensation was available. Nonetheless, in the face of an explicit court order precluding any reference to the instant lawsuit as plaintiff's sole remedy, we think plaintiff assumed some amount of risk that his "only chance" comments would provoke corrective action. Moreover, the district judge mitigated the risk of jury misuse and confusion by clearly explaining that the purpose of the instruction was to clarify plaintiff counsel's "only chance" comments.

We emphasize, however, that a more narrowly tailored curative instruction would have been more appropriate under the circumstances. For example, the trial judge simply could have instructed the jury that plaintiff's comments should be understood to mean only that this case was Toth's only chance for a jury to determine the truth of his claims, and that the jury should make no other inference about the availability or unavailability of other sources of compensation. In addition, it would have been advisable to inform the jury that it should not consider the availability or unavailability of other forms of compensation in deciding the underlying issue of liability. *See Wilcox*, 747 F.2d at 1061 (noting absence of "any explanation of the inapplicability of collateral benefits" in finding prejudice); *Green v. Denver & Rio Grande W. R.R. Co.*, 59 F.3d 1029, 1034 (10th Cir.), *cert. denied*, 516 U.S. 1009 (1995); *Torres v. Johnson Lines*, 932 F.2d 748, 752 (9th Cir. 1991). Under the circumstances, however, we do not believe that the district court's instruction was reversible error. Although the court's collateral benefits instruction was not the best course to take, we do not think that a new trial is

GTW gave plaintiff a copy of the switch list on November 21, 2000. Defense counsel Mary O'Donnell stated that she did not remember when she obtained the switch list. O'Donnell stated that she believed the switch list had no utility to plaintiff and was not responsive to the plaintiff's discovery requests "given [the] inability to produce car history records due to plaintiff's failure to cite to either a defect or to a specific car back in 1995." J.A. at 1023 (O'Donnell 1st Aff. at ¶ 20). The plaintiff, unsatisfied with GTW's explanations for the belated disclosure, filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 37(c).

Shortly before trial, GTW for the first time made plaintiff aware of the existence of car repair history records for the cars on Track 39 on the day of the accident. These records were generated by a computer program that could access and compile the repair histories of particular cars. According to the affidavit of GTW Chief Clerk Darrell Peterson, this computer program was old and rarely used, and it was not until November 27, 2000, that GTW learned it could access the repair history records.

On November 30, 2000, the district court entered an order denying plaintiff's motion for sanctions. The court noted its belief that GTW should have been more diligent in searching for and identifying the switch list and repair history records. Nevertheless, the court concluded that it lacked authority to sanction the defendant in the absence of a court order compelling disclosure by the defendant at an earlier date.

### B. Trial

The case proceeded to trial on November 28, 2000. The plaintiff's case on the issue of liability was based primarily on Toth's own account of the accident. Toth testified that on July 25, 1995, he was connecting, or "coupling," a series of train cars to a locomotive so they could be taken out of the yard. To couple train cars, a conductor lifts an operating lever on the coupling mechanism, which causes the coupling knuckle to open. Toth stated that the operating lever on one of the gondola cars was jammed and would not open properly.

He changed his position and again tried to open the coupling mechanism on this car. According to Toth, the lever finally lifted, but it swung up too far and "[t]hrew [his] arm up . . . and jerked it out of the socket." J.A. at 1231 (Toth Tr. at 29). The lever then swung back down and crushed Toth's left hand against the bulkhead of the railcar. Toth testified that an operating lever in proper condition could not be lifted more than 90 to 110 degrees from its original position, taking it to a position roughly parallel to the ground. Toth stated, however, that the gondola car's operating lever swung up a full 180 degrees before crashing back down onto the bulkhead. Toth testified that this could be explained by loose rivets in the coupling mechanism. Nobody other than Toth witnessed the accident.

After the accident, Toth reported his injury to Jamie VanEnglen, the trainmaster overseeing operations that night. Toth did not report any defect in the operating lever. VanEnglen instructed Toth to fill out a personal injury report, and then drove Toth to a nearby clinic for treatment. Toth testified that his hand was cut and bleeding and that his thumb had been broken in two places. After the fracture in his thumb healed, Toth continued to work as a conductor for about two years. Toth continued to experience pain in his left hand, however, and was unable to grip with the hand. Toth stated that he continues to experience pain in his hand and wrist, and that the pain has progressed to his shoulder.

GTW's key witness on the issue of liability was Bruce Shearer, District Mechanical Supervisor at the Flat Rock yard. Shearer testified that GTW's normal practice of inspecting safety appliances on train cars entering the yard would have discovered and corrected any defect such as the one claimed by the plaintiff before the cars were placed on Track 39 for coupling. Shearer also testified that the repair history reports for the cars on Track 39 indicated that, at the time of the accident, there were no defects on the coupling mechanism operating levers of any of the rail cars matching the style and manufacturer identified by Toth. Shearer was also shown a blown-up photograph of a gondola car's coupling mechanism.

under the Railroad Retirement Act ("RRA"). The defendant in that case attempted to introduce such evidence for the limited purpose of "impeaching the testimony of petitioner as to his motive for not returning to work and as to the permanency of his injuries." *Id.* at 254. The Court held that such evidence was not admissible even for this limited purpose, because "the likelihood of misuse by the jury clearly outweighs the value of this evidence." *Id.* The Court explained that "[i]t has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse." *Id.* The Court noted, moreover, that introduction of evidence of collateral benefits would be inconsistent with the spirit of FELA and the RRA. *Id.*

In *Wilcox v. Clinchfield Railroad Co.*, 747 F.2d 1059 (6th Cir. 1984), we held that it was error under *Eichel* for the trial court in a FELA action to inform the jury that plaintiff received other forms of compensation for his injury. During its deliberations in that case, the jury submitted two questions concerning whether the plaintiff had recovered medical expenses and whether plaintiff was paid for his "last working time." *Id.* at 1060. The district court informed the jury that plaintiff had received these benefits. After reviewing the *Eichel* opinion, we concluded that the court's response constituted reversible error. This conclusion was based upon our belief that "*Eichel* reflect[s] a strong policy against the use of such collateral source evidence in FELA . . . cases." *Id.* at 1061-62 (quotation omitted).

Based upon the principles articulated in *Eichel* and *Wilcox*, the district court's collateral benefits instruction was improper. As in *Wilcox*, the district court directly informed the jury of the availability of alternate sources of compensation, thus inviting potential misuse of this information. Nevertheless, this error was invited by plaintiff's own actions in pushing the limits of the pretrial order excluding any reference to this lawsuit as the plaintiff's "sole remedy." It is well established "that a party may not complain on appeal of errors that he himself invited or provoked the court . . . to commit." *Harvis v. Roadway*

them. Don't forget that Bill can never, ever come back again when you determine the truth and this time only. . . . [I]t's important for you to understand the finality of what you're doing and that if a week from now, a year from now Bill says well, what about this or what about this, we're not allowed to come on back. This is his one and only chance for a truthful verdict.

J.A. at 1527. According to GTW, plaintiff then clearly violated the order by stating the following:

But do not come back, do not come back and tell Bill Toth — this is his only chance. This is it for the rest of his life. Don't come back and tell him like the Railroad has, that he is a liar, that he wasn't injured. That he's a malingerer. . . . Come back with a truthful verdict.

J.A. at 1557.

Before jury deliberations began, GTW asked the court to issue a curative instruction to redress the statements of plaintiff's counsel. After considering the issue, the judge gave the following instruction to the jury:

During closing argument yesterday, a suggestion was made that this lawsuit is the only chance for recovery by Plaintiff William Toth for his claimed accident of July 25, 1995. You are hereby instructed that while this is his only opportunity to have a jury consider these claims, Plaintiff does in fact have other remedies available to him to recover compensation for this incident.

J.A. at 1569. Plaintiff objected to this instruction on the grounds that it impermissibly directs the jury to consider the availability of collateral benefits. Plaintiff now contends that the instruction constitutes reversible error.

Plaintiff bases his objection on the Supreme Court's opnion in *Eichel v. New York Central Railroad Co.*, 375 U.S. 253 (1963). In *Eichel*, the Court upheld the district court's decision to exclude evidence of plaintiff's receipt of benefits

He testified that the accident described by Toth was not possible due to the configuration and design of that type of coupling mechanism. On cross-examination, Shearer was shown a drawing prepared by Toth of the coupling mechanism allegedly involved in the accident. Shearer testified that the type of mechanism depicted in the drawing could cause the kind of accident described by Toth. Shearer stated, however, that the mechanism drawn by Toth was never used on gondola cars and was no longer manufactured at all.

At the close of GTW's case, counsel for Toth requested permission to call a number of rebuttal witnesses. Toth's counsel represented that Larry Reeves, an employee of GTW, and former GTW employee Dennis Ford would both testify that safety inspections were not regularly performed on cars entering and leaving the Flat Rock yard, as Shearer had suggested. Toth's counsel also sought to call Toth to testify on the issue of malingering. The district court rejected these witnesses on the grounds that these matters could have been covered in the case-in-chief.

At the conclusion of all the evidence, the jury returned a verdict for GTW. On a special verdict form, the jury indicated that it found that the operating lever used by Toth was not in violation of the Safety Appliance Act and that GTW was not negligent. Toth filed a timely notice of appeal.

## II. ANALYSIS

### A. Discovery Sanctions

Toth appeals the district court's decision denying his request for sanctions or a spoliation instruction based upon GTW's failure to provide the switch records or the repair history records in a timely fashion. Plaintiff's motion relied on Federal Rule of Civil Procedure 37(c) and requested that the judge either (1) vacate the trial date, permit plaintiff additional time for discovery, and issue a spoliation instruction, or (2) preclude defendant from offering any evidence to contradict plaintiff's testimony concerning the defective operating lever.

The district court denied the motion. The court explained that Rule 37(c) authorized sanctions only for failure to make disclosures mandated by Rule 26(a) or for failure to supplement disclosures in violation of Rule 26(e)(1). Rule 26(a)(1) provides for automatic disclosure of various items, including copies of certain documents relevant to the proceedings. Rule 26(e)(1) establishes a duty to supplement disclosures made under Rule 26(a)(1). The district court explained, however, that "Local Rule 26.3 states that Rule 26(a)(1) does not apply in this court unless ordered by a judge." J.A. at 1074. Since no such order had been issued in this case, the district judge concluded that there was no duty to make automatic disclosures pursuant to Rule 26(a)(1), and therefore there was no violation of the duty to supplement set forth in Rule 26(e)(1). Consequently, the court concluded that Rule 37(c) provided no authority to sanction. The court noted that Rule 37(b) authorizes the court to sanction a party for failure to comply with a court discovery order. The court explained that this rule provided no basis for relief, since no order compelling the defendant to answer interrogatories was ever issued. "Without a court order," the court concluded, "Defendant's actions are not sanctionable, and the motion is denied." J.A. at 1078.

We review a district court's decision regarding Rule 37 sanctions for abuse of discretion. *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 551 (6th Cir. 1994). "An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful." *Id.* When considering whether a district court has abused its discretion in making a sanctions decision, this court considers factors such as prejudice resulting from the discovery abuse, whether the noncooperating party was warned that violations would result in sanctions, and whether the court considered less drastic sanctions. *Id.* at 552.

defendant would be liable if its negligence contributed in any way to plaintiff's injury.

## 2. Collateral Benefit Instruction

Toth next argues that the judge improperly instructed the jury that they could consider alternative sources of compensation available to Toth for his injury. The challenged instruction was given at the urging of GTW, who argued that it was necessary to cure potential prejudice resulting from statements during Toth's closing argument suggesting that this action was his only remedy, which GTW contended were in violation of a pretrial order issued by the district judge. Before trial, GTW made a motion in limine to exclude "[a]ny claim or argument that the Federal Employers' Liability Act is plaintiff's sole remedy or that plaintiff is not entitled to workers' compensation benefits." J.A. at 251. GTW's motion was based upon legal authority suggesting that it is improper for counsel to argue to the jury that FELA is "the only method by which a railroad employee . . . may recover damages . . . for an on-the-job injury," *Weinell v. McKeesport Connecting R.R. Co.*, 411 F.2d 510, 512 (3d Cir. 1969), or for counsel to inform the jury that the plaintiff is not eligible for worker's compensation. *Stillman v. Norfolk & W. Ry. Co.*, 811 F.2d 834, 838 (4th Cir. 1987); *Kodack v. Long Island R.R. Co.*, 342 F.2d 244, 247 (2d Cir. 1965). These cases reflect a concern that jurors might be moved to find in favor of a plaintiff based upon their fear that the plaintiff's injuries would otherwise go uncompensated, instead of honestly assessing the employer's fault. The district judge granted GTW's motion and incorporated the ruling into the final pretrial order.

GTW believed that plaintiff violated this ruling during closing arguments when plaintiff's counsel twice suggested that the instant lawsuit was Toth's "only chance." GTW contends that, in the first instance, the plaintiff "skirted" the district judge's ruling by stating:

The Railroad . . . . want[s] to make every possible argument, hope that maybe you'll be convinced of one of

rule.    An examination of Toth's sketch of the coupling mechanism seems to support this theory.  At its extreme end, the lever curves 90 degrees to form a handle that is perpendicular to the arm of the operating lever.  If Toth had been holding onto this handle, his hand could not have been caught between the arm of the lever and the bulkhead.  This evidence, in combination with circumstantial evidence showing that the lever could not have been defective in the manner described by Toth, was sufficient to warrant presenting the question of sole proximate cause to the jury.

Toth further claims that the form of the sole-proximate-cause instruction was in error.  The instruction issued by the court directed the jury to find for the defendant if plaintiff's "conduct" was the sole cause of the injury.  Toth is correct that this is a misstatement, since the relevant inquiry is whether Toth's *negligence* was the sole cause of the accident, not his "conduct." *Morrison*, 361 F.2d at 321.  Nevertheless, the error was harmless. *See Elwell v. Univ. Hosp. Home Care Servs.*, 276 F.3d 832, 844 (6th Cir. 2002) (error in jury instructions harmless because minimal risk of prejudice or confusion).  We have previously explained in the context of a FELA case that "a reviewing court should not pick out one erroneous paragraph of a long charge and reverse upon it, if, upon consideration of the entire charge, it appears that the jurors were correctly instructed as to the applicable law in such manner as to leave no confusion in their minds." *Tyree*, 382 F.2d at 528 (quotation omitted). In *Tyree*, we determined that the trial judge's misstatement of the standard for proximate cause in a FELA case during the jury charge was harmless error because the charge as a whole contained clear instructions that liability should be found if the employer's negligence played any part in the accident. *Id.* at 528-29. Likewise, in the instant case, although the court misspoke in using the word "conduct" as opposed to "negligence," any error was harmless when viewed in context with the instruction as a whole.  The court's instruction consistently referred to plaintiff's "negligence" as the relevant factor, shifting to "conduct" only in the one instance.  In addition, the court's instructions repeatedly informed the jury that the

The version of Rule 37(c)(1) in effect at the time of the proceedings[2] provides in relevant part:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.  In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.

FED. R. CIV. P. 37(c)(1), FEDERAL CIVIL JUDICIAL PROCEDURE & RULES (West 2000) (amended 2000).  This provision did not specifically authorize sanctions for failure to supplement or adequately respond to interrogatory questions.  Although the records sought by plaintiff in this case fall under the disclosure requirements of Rule 26(a)(1),

---

[2] The Federal Rules of Civil Procedure were amended in 2000.  The 2000 amendments substantially changed the discovery rules at issue in the instant case.  The parties are in apparent agreement that the pre-2000 version of the federal rules applies to Toth's sanctions claim.  We agree that the pre-2000 rules apply.  "Generally a new procedural rule applies to the uncompleted portions of suits pending when the rule became effective . . . ." *Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000).  The effective date of the amendments was December 1, 2000.  The district court's order denying sanctions was issued on November 30, 2000.  By this time, nearly all of the discovery had been completed, and the trial was underway.  Therefore, it appears that all portions of the suit relating to Toth's motions for sanctions were completed prior to the effective date of the amendments.  The pre-2000 federal rules therefore should apply. *See Hashemi v. Campaigner Publ'ns, Inc.*, 784 F.2d 1581, 1584 (11th Cir. 1986) (holding that "bad faith" standard of pre-amendment Rule 11 applied to case where suit was filed and district court dismissed prior to effective date of amendment); *accord Richardson Elecs.*, 202 F.3d at 958 (holding that amended rule that became effective after suit was filed but before issuance of order being appealed applied to claim on appeal); *Espinoza v. United States*, 52 F.3d 838, 840 (10th Cir. 1995) (holding that amended version of FED. R. CIV. P. 4 governed service of process in case where amendment became effective before deadline for service expired and before judge's order dismissing suit).

that rule was not binding on the parties under the local rules of the district court.[3]  Rule 26(e)(1) is similarly unavailing to the plaintiff, since it establishes a duty to supplement Rule 26(a)(1) disclosures only to the extent that such disclosures were required. Rule 26(e)(2) establishes a duty to supplement interrogatory responses; however, Rule 37(c)(1) did not authorize sanctions for Rule 26(e)(2) violations at the time of the district court proceedings.[4]  Thus, the plaintiff could show no basis for sanctions under Rule 37(c)(1).

Despite the fact that Rule 37(c)(1) did not then provide explicit authority for sanctions, however, the district court was incorrect that it lacked the authority to sanction defendants in the absence of a court order.  Even before the 2000 amendments to the federal rules, we recognized that "[e]xclusion of evidence, continuance, or other action deemed appropriate by the court may be imposed as a sanction for breach of the duties set forth under Rule 26(e)." *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1153 (6th Cir. 1988). Thus, despite the omission of any mention of Rule 26(e)(2) in the pre-2000 version of Rule 37(c)(1), district courts were still able to sanction Rule 26(e)(2) violations pursuant to their inherent power to sanction. *See* FED. R. CIV. P. 37 advisory committee notes (2000) (noting that omission of Rule 26(e)(2) in prior version of Rule 37(c)(1) forced courts to "rely on inherent power to sanction for failure to supplement as required by Rule 26(e)(2)"). This inherent authority exists even where, as here, no court order has been issued. *See Alldread v. City of*

---

[3]The version of Rule 26(a) in effect at the time of the proceedings permitted districts to "opt out" of the initial disclosure requirement under local rule.  FED. R. CIV. P. 26(a), FEDERAL CIVIL JUDICIAL PROCEDURE & RULES (West 2000) (amended 2000). Rule 26(a) has since been amended to remove the authority of districts to "opt out." *See* FED R. CIV. P. 26(a) (West 2002).

[4]This omission was remedied by the 2000 amendments to the federal rules, which added Rule 26(e)(2) violations to the list of offenses sanctionable under Rule 37(c)(1); however, as explained above, the 2000 amendments are of no avail to the plaintiff.  *See* FED. R. CIV. P. 37 advisory committee's notes to Rule 37(c)(1) (2000).

414 (8th Cir.), *cert. denied*, 467 U.S. 1216 (1984).  Therefore, we think the instruction was proper.

Plaintiff also argues that GTW failed to present sufficient evidence of plaintiff's negligence to warrant such an instruction. As an affirmative defense, GTW bears the burden of proof in establishing Toth's negligence as a sole proximate cause. "It is error . . . to instruct the jury on an issue when there has been insufficient evidence presented to support a jury finding on that issue." *Jones v. Consol. Rail Corp.*, 800 F.2d 590, 592 (6th Cir. 1986).  Plaintiff relies on this court's opinion in *Dixon v. Penn Central Co.*, 481 F.2d 833 (6th Cir. 1973), in which we reversed the district court's decision to instruct the jury on contributory negligence in a FELA action for the purpose of allocating damages. The *Dixon* court held that "a defendant is not entitled to reach the jury on an issue on which he bears the burden of proof on nothing but the incredibility of the plaintiff's testimony." *Id.* at 837.  In *Dixon*, as here, the plaintiff was the only direct witness to his accident.  The plaintiff was injured when, after attempting to throw a lever, the lever recoiled and struck him. *Id.* at 834. We noted that there was no evidence tending to show that the plaintiff had acted in a manner that was unreasonable in any way, and therefore contributory negligence could not be proved. *Id*. at 836-37. It was not enough, in other words, to merely disbelieve that the accident happened the way the plaintiff claimed, without evidence of conduct that fell below the normal standard of care and that contributed to the accident.

We conclude that the defendant introduced sufficient evidence to warrant the sole-proximate-cause instruction. The defense argued, based in part upon plaintiff's conflicting answers during cross-examination, that the accident could have resulted from the plaintiff's negligence in improperly gripping the operating lever.  GTW also cites safety rules, contained in Defense Exhibit FF, which require an employee to grip the extreme end of an operating lever handle at arm's length.  GTW claims that the accident could not have occurred as plaintiff describes if he had been observing this

### 1. Sole Proximate Cause Instruction

Toth first objects to the district court's decision to instruct the jury that it should find for the defendant if it determined that plaintiff's conduct was the sole proximate cause of his injury. Specifically, the district court instructed: "if you should find that Plaintiff's conduct on July 25, 1995 was the sole cause of any injury he sustained on that date, then your verdict should be for the Defendant without regard to whether Defendant was negligent or whether Defendant violated the Safety Appliance Act." J.A. at 1516-17. Plaintiff reminds the court that, under FELA, an employee's contributory negligence is not a defense to liability, and an employer will therefore be liable if its negligence played any role in causing the plaintiff's injury. *See Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 507-08 (1957). In addition, a violation of the Safety Appliance Act, without more, is sufficient to establish employer negligence under FELA and likewise "eliminates contributory negligence as a consideration." *Id.* at 507 n.13. Plaintiff contends that instructing the jury to consider plaintiff's negligence as a possible alternative cause was confusing to the jury and diverted attention from employer's negligence.

We have previously held that it is not an error for the trial court to instruct the jury in a FELA case to return a verdict for the defendant if "plaintiff's own negligence was the sole proximate cause of his injuries." *Morrison v. N.Y. Cent. R.R. Co.*, 361 F.2d 319, 321 (6th Cir. 1966); *Tyree v. N.Y. Cent. R.R. Co.*, 382 F.2d 524, 527 (6th Cir.), *cert. denied*, 389 U.S. 1014 (1967); *see also Hurley v. Patapsco & Black Rivers R.R. Co.*, 888 F.2d 327, 330 (4th Cir. 1989). If the employee's own negligence was the sole cause of the accident, then it is proper to conclude that employer negligence played no role in causing the injury. *See Keith v. Wheeling & L.E. Ry. Co.*, 160 F.2d 654, 657 (6th Cir.), *cert. denied*, 332 U.S. 763 (1947). Likewise, other courts have concluded that "[i]f the plaintiff's negligence was the *sole* cause, then the violation of the Safety Appliance Act could not have contributed in whole or in part to the injury." *Beimert v. Burlington N., Inc.*, 726 F.2d 412,

*Grenada*, 988 F.2d 1425, 1436 (5th Cir. 1993) ("Rule 26 imposes no requirement, express or implied, that a motion to compel precede a court's imposition of a sanction . . . for failure to supplement expert interrogatory responses."). We therefore think that the district court erred in failing to consider whether the facts justified sanctions under its inherent authority.

Nevertheless, we conclude that the district court's error is not grounds for reversal. As we have explained, an "[a]ppellant must show substantial prejudice before we will grant a new trial based on an alleged Rule 26(e) error." *Hines*, 850 F.2d at 1153; *see also Erskine v. Consol. Rail Corp.*, 814 F.2d 266, 272-74 (6th Cir. 1987) (finding prejudice based upon railroad's failure to timely disclose maintenance records where records would have shown advanced age of train car and that device had malfunctioned in the past). Toth has not made such a showing. In his brief on the sanctions motion, Toth maintained that disclosure of the switch records would have enabled him to identify the car involved in his injury and allowed him to uncover repair histories for the car. GTW subsequently obtained repair history records for these cars, however, and the records refute the existence of a defective operating lever. Thus, earlier disclosure would not have assisted plaintiff. Toth has not shown that earlier disclosure of the switch records or repair histories would have uncovered any evidence favorable to his claim. Therefore, we conclude that there is insufficient showing of prejudice to warrant a new trial.

### B. Rebuttal Evidence

At the close of GTW's case, Toth's counsel requested permission to call several witnesses in rebuttal, including Toth and Ford. J.A. at 1486 ("[T]he rebuttal testimony will be Mr. Dennis Ford and Mr. Toth in addition to the brief questioning of Mr. Siebert."). Toth's counsel stated that he proposed to call Ford for the limited purpose of "rebutting Mr. Shearer's testimony about cars being inspected anytime they go in or out of the yard." J.A. at 1485. Toth's attorney

then added that he "would call Mr. Toth to the stand first of all to rebut the testimony of malingering" and also to allow the jury to see Toth's hand. J.A. at 1485. The judge denied the plaintiff's request as to both Toth and Ford because "[t]hese matters could have been covered as part of the case-in-chief." J.A. at 1488. Toth argues that the district court erred in excluding this rebuttal evidence.

We review the district court's decisions "regarding the order of proof and scope of rebuttal testimony" for abuse of discretion. *Benedict v. United States*, 822 F.2d 1426, 1428 (6th Cir. 1987). We have recognized that the district judge has the discretion to "limit the scope of rebuttal testimony to that which is directed to rebut new evidence or new theories proffered in the defendant's case-in-chief." *Martin v. Weaver*, 666 F.2d 1013, 1020 (6th Cir. 1981) (citations omitted), *cert. denied*, 456 U.S. 962 (1982). Evidence or theories offered by the defendant are "new" for rebuttal purposes "if, under all the facts and circumstances, . . . the evidence was not fairly and adequately presented to the trier of fact before the defendant's case-in-chief." *Benedict*, 822 F.2d at 1429 (quotation omitted). The district court's discretion to exclude proffered rebuttal testimony is not unlimited. "[W]here . . . the evidence is real rebuttal evidence, the fact that it might have been offered in chief does not preclude its admission in rebuttal. Furthermore, with respect to 'real rebuttal evidence,' the plaintiff has no duty to anticipate or to negate a defense theory in plaintiff's case-in-chief." *Martin*, 666 F.2d at 1020 (quotation and brackets omitted) (holding that district court abused discretion in excluding rebuttal witness to refute affirmative defense of official immunity and defendant officer's version of the facts).

Our decision in *Benedict* illustrates the parameters of district courts' discretion to exclude rebuttal testimony. In *Benedict*, the plaintiff claimed that she contracted a serious disease as a result of a swine-flu vaccination administered by the government. In her case-in-chief, plaintiff presented an expert who relied principally on clinical observation and the temporal connection between the vaccination and the onset of

basis for GTW's defense. The regulations were only relevant to whether GTW withheld material evidence from the plaintiff. Therefore, the questions were relevant only to the issue of spoliation, and did not address the question of liability. Since the issue of spoliation was not before the jury, however, the court did not abuse its discretion in ruling that the request for judicial notice was outside the proper scope of rebuttal.

Plaintiff now claims that judicial notice of the regulations would have established a basis for finding GTW negligent per se based upon its violation of federal record-keeping and inspections requirement. However, this is not the basis upon which judicial notice was originally sought. Toth's counsel never purported that judicial notice was being sought for any purpose other than to question Siebert concerning whether the railroad was aware of the availability of repair records for the cars on Track 39 prior to the time that these records were ultimately produced. Thus, the negligence per se issue was not properly presented to the district court. Moreover, if Toth intended to use the regulations for this purpose, then he was really offering them to state the governing law, not any fact relevant to the proceedings. Had Toth intended to offer this theory of liability, the proper course would have been to request a jury instruction on negligence per se rather than to request judicial notice of the federal regulations.

## D.  Jury Instructions

Toth next raises a number of objections relating to the district court's jury instructions. We review the district court's instructions to the jury "as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision. A judgment may be reversed only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72-73 (6th Cir. 1990) (citation omitted).

before they were destroyed. Plaintiff then asked Siebert whether, as part of his risk management responsibilities, he was aware of certain federal railroad regulations concerning equipment inspections and record keeping requirements. Siebert answered that he was not specifically aware of these requirements. Plaintiff then began to read excerpts of these regulations to Siebert. GTW objected on the grounds that plaintiff had not established a foundation for the regulations, since Siebert answered that he was not familiar with them. At that time, plaintiff requested judicial notice be taken of the regulations so he could read them into the record. The court denied the request, noting that plaintiff was "given an opportunity to depose . . . Mr. Siebert . . . and you opted not to do that, and Mr. Siebert is telling you that he's not familiar with the references that you want to put into the record. . . . And you would have found that out had you deposed him." J.A. at 1493.

We conclude that the district court's ruling was not an abuse of its discretion. The court did not rule that the federal regulations proffered by the plaintiff were not facts properly subject to judicial notice. Rather, the court sustained defendant's objection, which was based upon plaintiff's improper foundation and the scope of rebuttal. Plaintiff's questioning about the regulations appeared to be aimed at undermining GTW's assertions that it was unaware before November 27, 2000, of the availability of the car repair history records, and that no inspections were performed as a result of Toth's accident. It appears plaintiff was attempting to show that these representations could not be true in light of federal regulations requiring inspection records to be maintained for five years and mandating inspections following injuries. Although the regulations might be relevant to the credibility of GTW's assertions regarding the availability of inspection records, plaintiff's questions to Siebert about the regulations were potentially confusing and time-wasting since Siebert obviously was not familiar with the regulations. *See* FED. R. EVID. 611(a). In addition, plaintiff's questions regarding the regulations did not go to the accuracy or validity of the repair records that formed the

the disease to prove causation. *Id.* at 1428. The government, in its case, presented experts who testified that a causal relationship could only be established through epidemiological data, not clinical observation, and that the epidemiological data refuted plaintiff's theory of causation. *Id.* at 1428-29. Plaintiff sought to introduce expert testimony on rebuttal to show that the epidemiological data cited by the defense experts was inaccurate and that the data was actually consistent with the plaintiff's theory. The district court excluded the rebuttal testimony because it "logically belonged in the case-in-chief and went to the case's central issue of causation." *Id.* at 1428. We reversed. We explained that although the evidence was relevant to causation, the plaintiff was not required to present any particular theory of causation in her case-in-chief, and it was permissible to choose to present only the clinical theory and then rebut the new epidemiological theory after it was presented by the defense. *Id.* at 1429. We noted that "[a]lthough the epidemiological evidence was not 'new' since the parties knew of its existence prior to trial, it was new for rebuttal purposes." *Id.* We further explained that "[u]nder the law of this Circuit the [plaintiff] had no duty to anticipate the government's defense or to negate in its own case-in-chief a theory that would later be raised by the government." *Id.* at 1429-30.

### 1. Safety Inspections Rebuttal Evidence

Based upon the foregoing principles, we conclude that the district court erred in excluding the rebuttal testimony of Ford.[5] According to plaintiff's counsel, Ford would have

---

[5]Plaintiff also argues that the district court improperly excluded the testimony of Larry Reeves, which was also offered to rebut the inspections claim. We do not think that Reeves was properly presented to the trial court as a rebuttal witness. At the close of the defendant's case, the plaintiff mentioned that he "would ask that we be permitted to subpoena Mr. Larry Reeves" and he mentioned deposition statements by Reeves offered in an unrelated case indicating that cars were not properly inspected. J.A. at 1481. However, before the court ruled on the rebuttal request, it asked "[w]ho is your rebuttal witness?" J.A. at 1485. This time, plaintiff said "the rebuttal testimony will be Mr. Dennis Ford and

testified that he worked for GTW as a car man, "that he would be ordered to send cars out that had not been inspected," and "that the Car Department was ordered to keep these cars moving whether or not there was an inspection." J.A. at 1584. This testimony was offered to rebut the testimony of Shearer and the defense's theory that the defect alleged by Toth could not have escaped GTW's rigorous inspection program.

We think Ford's testimony was "real rebuttal evidence." The proffered evidence is directly responsive to the defense theory presented through the testimony of Shearer. The substance of Shearer's testimony, that GTW's inspection program would have detected the defect before the car left the yard, was not fairly and adequately presented before the defense's case-in-chief. Toth's strategy in his case-in-chief was to rely on his own direct account of the accident and his own observation of the defect. Although evidence concerning deficiencies in the railroad's inspection practices would have been relevant to prove the existence of a defect, it was not necessary for the plaintiff to pursue this theory in his case-in-chief. *See Benedict*, 822 F.2d at 1429. The district court's stated reason for excluding the rebuttal testimony was that it could have been offered in the case-in-chief. *Benedict* establishes that this factor is irrelevant, as long as the rebuttal is offered to refute new evidence offered in defendant's case-in-chief. *Id.* Toth had no duty to anticipate GTW's defense.

GTW contends that the proffered rebuttal was not "new evidence" for rebuttal purposes because Toth testified about inspections during plaintiff's case-in-chief. The record

Mr. Toth in addition to the brief questioning of Mr. Siebert." J.A. at 1486. These were the only witnesses on which the district court ruled. Toth's reference to a possible subpoena suggests that Reeves was not available at that time. Therefore, we decline to consider Toth's claim concerning Reeves's testimony. Moreover, from plaintiff counsel's proffers, it appears that Reeves's testimony would have been the same as Ford's in substance. Thus, our conclusion that Toth has not shown reversible error as to Ford would also apply to plaintiff's claim as to Reeves.

. . . .

**(d) When mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.

Although the rule is phrased in mandatory language, courts of appeals review a district court's refusal to take judicial notice for abuse of discretion. *See Waid v. Merrill Area Pub. Sch.*, 130 F.3d 1268, 1272 (7th Cir. 1997); *York v. AT&T Co.*, 95 F.3d 948, 958 (10th Cir. 1996).

Administrative regulations fall within the category of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b); *see also Int'l Bhd. of Teamsters v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) ("[A] Court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority."). As a general matter, judicial notice is available only for "adjudicative facts," or the "facts of a the particular case," as opposed to "legislative facts," which are facts "which have relevance to legal reasoning . . . , whether in the formulation of a legal principle or ruling by a judge . . . or in the enactment of a legislative body." FED. R. EVID. 201 advisory committee's note (1972). Thus, judicial notice is generally not the appropriate means to establish the legal principles governing the case. However, whether a fact is adjudicative or legislative depends upon the manner in which it is used. *United States v. Bello*, 194 F.3d 18, 22-23 (1st Cir. 1999). A legal rule may be a proper fact for judicial notice if it is offered to establish the factual context of the case, as opposed to stating the governing law.

The plaintiff's request for judicial notice occurred during a confusing exchange between counsel and the court. Plaintiff questioned Siebert concerning GTW's assertion that it was unaware before November 27, 2000, of the availability of train car repair history records. Plaintiff read Siebert an excerpt from a GTW employee's affidavit representing that GTW's policy was to retain such records for twelve months

defense's theory of malingering. There was no mention of any testimony involving the photograph. Since the testimony was not offered to the district court, there was no error in excluding it.

Moreover, the substance of Toth's proffered testimony had already been presented to the jury. According to the plaintiff, Toth would have testified that his injury was caused by the type of coupling mechanism depicted in his drawing, not the one depicted in the photograph. However, Toth's original testimony had already made clear his position that he was injured by a mechanism resembling the one in his drawing, and Shearer admitted that the drawing depicted a different kind of coupling mechanism than the one pictured in the photograph. Toth's testimony on rebuttal would have added nothing new for the jury to consider. Therefore, the district court did not abuse its discretion in excluding Toth's testimony.

## C.  Judicial Notice of CFR Regulations

Toth appeals the district court's decision not to take judicial notice of certain regulations contained in the Code of Federal Regulations ("CFR") concerning the inspection and record-keeping requirements applicable to railroads. The request for judicial notice occurred during Toth's questioning of Randy Siebert, a representative of GTW, on rebuttal. Toth renewed his request during his closing argument, and after the jury was instructed.

Federal Rule of Evidence 201 governs judicial notice of adjudicative facts. The rule, in relevant part, provides:

**(a)  Scope of the rule.** This rule governs only judicial notice of adjudicative facts.
**(b)  Kinds of facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

citations offered by GTW are from defense counsel's cross-examination of Toth, during which Toth was asked several general questions about safety inspections at Flat Rock. Toth was asked whether safety inspections were performed on incoming rail cars, along with other questions about the general practice of inspections. These questions, however, did not "fairly and adequately" present defense's theory that it would have been impossible for the alleged defect to escape detection. *See Benedict*, 822 F.2d at 1427, 1429 (finding that epidemiological expert's testimony was "new evidence" when offered to prove that plaintiff's theory of causation was impossible notwithstanding fact that the plaintiff's expert acknowledged potential value of epidemiological evidence during case-in-chief). The fact that defense counsel uses its cross-examinations during plaintiff's case-in-chief to lay the foundation for potential defense theories does not impose a burden on the plaintiff to anticipate and rebut all such theories during his or her case-in-chief.

Relying on our decision in *Varga v. Rockwell International Corp.*, 242 F.3d 693, 701 (6th Cir.), *cert. denied*, 122 S. Ct. 53 (2001), GTW argues that the district court was within its discretion in ruling that Toth should have presented Ford's testimony in his case-in-chief. In *Varga*, the district court denied plaintiffs' request, in an age discrimination case, to introduce rebuttal evidence to refute the defendant's statistical analysis of its reduction-in-force decisions. We affirmed. We explained that *Benedict* did not apply because the plaintiffs' proffered rebuttal evidence was not "real rebuttal evidence." *Id.* In reaching this conclusion, we noted that the record supported the district court's findings that: (1) the plaintiffs knew about the statistical analysis and its importance to the case; (2) the plaintiffs chose not to depose defendant's statistical expert about the study; and (3) "the testimony plaintiffs contended [their witness] would present in rebuttal was not inconsistent with the testimony plaintiffs wanted to rebut and its substance had already been presented to the jury through . . . other witnesses." *Id.* GTW contends that *Varga* implicitly approved exclusion of rebuttal evidence when the plaintiff knows about the evidence and its relevance before

his or her case-in-chief or when the plaintiff's failure to anticipate a defense theory is due to the plaintiff's own failure to conduct discovery.

GTW misreads *Varga*. *Varga* did not purport to overrule *Benedict*, which clearly establishes that the plaintiff has no duty to anticipate the evidence or theories that will be presented by the defense. *Benedict*, 822 F.2d at 1429-30. Thus, the fact that a plaintiff knew a defendant would present certain evidence, or would have known if the plaintiff had conducted more thorough discovery, is not a proper ground for excluding "real rebuttal evidence." *Varga* did not suggest otherwise; it merely noted the district court's factual findings. *Varga* did not state that any of these findings, standing alone, would justify the exclusion of "real rebuttal evidence." Instead, *Varga* concluded that the proffered testimony was not "real rebuttal evidence" at all. 242 F.3d at 701. This conclusion was consistent with our determination that the proffered rebuttal evidence had already been presented to the jury and was not responsive to the new evidence presented by the defense. *Id.*

Thus, we conclude that the plaintiff's proffered rebuttal evidence concerning inspections was "real rebuttal evidence," and therefore the district court erred in excluding it. Nevertheless, we determine that the district court's error was harmless and does not warrant reversal. *See* FED. R. CIV. P. 61( "No error in either the admission or the exclusion of evidence and no error or defect in any ruling . . . is ground for . . . disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice."); *see also Gandy v. Sullivan County*, 24 F.3d 861, 866 (6th Cir. 1994); 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2883 (2d ed. 1995) ("Plainly Rule 61 teaches that the proceedings are not to be disturbed because of an error that prejudiced no one."). Even if the jury had heard Ford's testimony, it would at best refute GTW's theory that the safety inspection system at Flat Rock would not have missed the alleged defect. However, Toth made no effort to refute the repair history records, which

showed that no such defects were identified on any of the Conrail gondola cars on Track 39 for several months *after* they left Flat Rock. In addition, Toth's proffer did not respond to Shearer's testimony that Toth's account of the accident was not possible, since the coupling mechanism Toth described was not used on gondola cars. Moreover, the record contains no evidence, other than the representations of plaintiff's counsel at trial, of what Ford's precise testimony would have been had he taken the stand. In the face of GTW's substantial and uncontradicted evidence that the operating lever was not defective, it is difficult for us to conclude that Ford's testimony might have swayed the jury when the plaintiff has offered no affidavit, deposition, or other form of proffer to substantiate counsel's representations about this testimony. Therefore, we conclude that the district court's refusal to accept Ford's testimony on rebuttal was harmless error.

## 2. Toth's Testimony Regarding the Photograph

Toth further contends that the district court should have allowed him to take the stand again in rebuttal to respond to the photographic enlargement of a gondola car coupling mechanism presented during Shearer's testimony. Toth claims he would have testified that the photograph depicted a different kind of coupling mechanism than the one that allegedly caused his injury.

We determine that this claim is without merit. First, the record reveals that Toth's testimony about the photograph was not even offered on rebuttal. The only time plaintiff's counsel suggested that Toth would testify regarding the photograph was before the defense's case-in-chief, when plaintiff's counsel stated that he "plan[ned] on bringing Mr. Toth on rebuttal if for no other reason than to look at that photo and to talk about the index finger." J.A. at 1346. The court promptly indicated that it was "not ready to talk about rebuttal yet because they haven't even put in their case-in chief yet." J.A. at 1347. At the close of the government's case, plaintiff's counsel only offered Toth's testimony to rebut the