Herbert M. FRIEDMAN,
Plaintiff–Appellant,

v.

UNITED STATES of America; United
States Bureau of Prisons,
Defendants–Appellees.

No. 02–1802.

United States Court of Appeals,
Sixth Circuit.

Dec. 10, 2003.

Herbert M. Friedman, pro se, Linden, MI, for Plaintiff–Appellant.

Elizabeth Larin, Asst. U.S. Attorney, Detroit, MI, for Defendants–Appellees.

Before: RYAN, MOORE, and ROGERS, Circuit Judges.

## ORDER

Herbert M. Friedman, proceeding pro se, appeals a district court judgment dismissing his civil complaint filed pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Seeking monetary and equitable relief, Friedman sued the United States and the United States Bureau of Prisons, essentially claiming that: 1) the defendants failed to provide him with adequate treatment for Crohn's disease (a chronic inflammatory bowel condition) and for ankylosing spondylitis (a spinal condition); and 2) he was exposed to second-hand cigarette

smoke. Upon initial review, the district dismissed the complaint for failure to state a claim. On appeal, a panel of this court affirmed in part, reversed in part, and remanded the case with instructions for the district court to permit Friedman to amend his complaint to assert a claim based on the defendants' alleged negligence in providing for the safekeeping, care and substance of federal prisoners under 18 U.S.C. § 4042. *Friedman v. United States*, No. 99–1445, 2000 WL 876391 (6th Cir. June 21, 2000).

On remand, Friedman alleged that the defendants engaged in culpable negligence in violation of § 4042(a)(2), when they failed to provide him with sanitary living conditions, proper diet, and adequate bedding, which exacerbated his health conditions. At trial, Friedman also alleged that his Crohn's disease was exacerbated by exposure to second-hand cigarette smoke. Following the bench trial, the district court ruled that Friedman had not established that the defendants were negligent in the discharge of their duties, and it granted judgment in favor of the defendants.

Friedman has filed a timely appeal essentially reasserting his claims. He also argues that the trial judge was biased against him, that he improperly declined to take judicial notice of adjudicable facts, that he improperly denied Friedman the opportunity to present a rebuttal witness in response to the testimony of a prison dietician (Mayhew), and that the trial judge erred by failing to compel the testimony of a witness (Reiner).

Upon review, we conclude that the district court properly granted judgment in favor of the defendants. This court reviews conclusions of law de novo and findings of fact for clear error. *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir.1995). A finding of fact is clearly erroneous when the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

The trial court properly concluded that the defendants were not negligent in the discharge of their duty to provide Friedman with a diet amenable to his Crohn's disease. A review of the record reflects that the defendants took reasonable steps to accommodate Friedman's needs. Friedman acknowledged that, shortly after he arrived at FMC–Rochester (FMC), he met with the prison physician (Reiner) and reviewed his medical history with the doctor. Friedman testified that he informed Reiner that he was accustomed to eating six small meals per day, and had been avoiding greasy, fried foods and highly spiced foods. Reiner arranged for Friedman to meet with the prison dietician (Mayhew). Mayhew testified that she met with Friedman and performed a nutrition assessment, and she made note of Friedman's intolerance for high fiber foods and large quantities of dairy products. Mayhew arranged for multiple feedings and increased Friedman's snacks. Friedman began to complain about the food he was receiving, and the defendants responded by offering diet tray meals and changing the snacks provided to Friedman. Friedman's and Mayhew's testimony also established that Friedman received three meals per day, plus a snack in the evening. Although Friedman argued that he was not permitted to keep any snack items overnight to be consumed the next day, Mayhew testified that inmates were allowed to keep snack items in the refrigerator at the nurses' station. In addition, Friedman's former FMC roommate testified that he was unaware of any problem with inmates being allowed to keep snacks overnight.

■ The district court properly concluded that the menu items made available to Friedman did not represent negligence on the defendants' part. Friedman complained that he was not provided with bananas or cottage cheese, and that he was served the same flavor of Jell–O on 23 consecutive days. However, he has not presented anything establishing that he could not tolerate the food items provided to him, or that the defendants were obligated to make alternative food items available to him. The record also reflects that there is no such thing as a "Crohn's diet." Friedman's post-incarceration gastroenterologist (Wiley) explained that there is no clear-cut association between a person's diet and flare-ups of Crohn's disease symptoms, and that the cause of Crohn's disease is unknown.

■ The district court properly concluded that the defendants established that they took reasonable steps to maintain proper sanitation at FMC. Friedman argued that the unsanitary conditions at FMC, including unclean utensils and an appearance of rodent feces on inmate food trays, caused him to lose his appetite which adversely impacted his Crohn's disease. The record reflects that the defendants were not negligent in this regard. During his deposition, the food service administrator (Wiesmann) testified that the dishwashing equipment used at FMC was checked daily to ensure that it was functioning properly. Wiesmann also testified that all of the dishes and utensils went through a pre-wash, a wash, and a rinse cycle. Furthermore, the dishes and utensils were treated with a liquid sanitizer and were heated to a minimum of 180 degrees to ensure cleanliness. With respect to Friedman's complaints about the rodent feces, the record does not reflect that Friedman alleged that the feces came into contact with any food or that he actually ingested any feces. Friedman acknowledged that prison staff was notified immediately, and that the staff apologized and promised to investigate the matter. Moreover, Wiesmann testified that the food service areas were inspected regularly, and that traps and chemical means were used to control mice.

■ Finally, the defendants were not negligent with respect to Friedman's complaint that exposure to second-hand smoke exacerbated his Crohn's disease. First, the record does not reflect that Friedman ever complained to any prison official about the second-hand smoke or the alleged failure of prison guards to enforce the "no-smoking indoors" rule. Second, Friedman's treating physician testified that he was unaware of any connection between exposure to second-hand smoke and exacerbation of Crohn's disease symptoms.

■ We also conclude that the district court properly concluded that Friedman did not establish that the defendants provided inadequate housing and bedding that exacerbated his back and neck conditions. The record reflects that the defendants took appropriate steps to address Friedman's complaints of back and neck pain. Although Friedman complained that the bed he slept on for the first sixty days of his confinement was too thin and caused him back and neck pain, he acknowledged that the defendants transferred him to a different floor and provided him with an adequate mattress. The defendants responded to Friedman's complaints by referring him to physical therapy and ordering MRIs and X–Rays to assist in the treatment of Friedman's pain. Friedman was also seen by a Dr. Suarez, who ordered the use of a TENS unit (electrical nerve stimulator), which Friedman used for three months and reported improvement in his pain. This evidence clearly

establishes that the defendants took appropriate steps to examine and treat Friedman's back and neck pain.

In addition, Friedman failed to present any medical evidence establishing a causal connection between the mattress he slept on for the first two months of confinement at FMC and his back and neck conditions. One of the doctors who examined Friedman (Nicolosi) testified that the radiological findings in Friedman's spine are "more often than not" caused by long-term chronic effects of the aging process. He explained that Friedman had degenerative changes in his spine, meaning changes caused by "wear and tear with age," which occurred over a course of years.

■ Friedman has not established that the trial judge exhibited any bias or prejudice towards him. Personal bias is prejudice that emanates from some source other than participation in the proceeding or prior contact with related cases. Personal bias arises out of a judge's background and associations. The critical test is whether the alleged bias "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Wheeler v. Southland Corp.,* 875 F.2d 1246, 1251–52 (6th Cir.1989). Although Friedman complains of the trial judge's prior rulings, including the previous dismissal of Friedman's complaint, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Moreover, a review of the transcript does not support Friedman's contention that the trial judge showed any bias against him because he was a prisoner. Although the trial judge may have expressed his impatience or annoyance at Friedman's complaints concerning the receipt of Jell–O for 23 consecutive days, such comments alone do not establish judicial bias. *See Maurino v. Johnson,* 210 F.3d 638, 645 (6th Cir.2000).

■ The trial court did not abuse its discretion when it denied Friedman's request to call a rebuttal witness. This court reviews a district court's decisions regarding the order of proof and the scope of rebuttal testimony for an abuse of discretion. *Toth v. Grand Trunk R.R.,* 306 F.3d 335, 345 (6th Cir.2002). Real rebuttal evidence is evidence presented to rebut "new evidence." Friedman has not identified any issue raised by Mayhew's (the BOP dietitian) testimony that his proposed witness (a dietitian from the University of Michigan) would have rebutted. The only witness called to testify at trial by the defendants was Mayhew. However, Mayhew's testimony presented no novel theories or previously unexplored evidence. Because the proposed topics for the University dietitian would not have rebutted "new evidence," the district court did not abuse its discretion.

■ The trial court did not abuse its discretion when it declined to compel the defendants to make Dr. Reiner available to testify at trial. The trial court has broad discretion in the manner in which it conducts trials. *Mitroff v. Xomox Corp.,* 797 F.2d 271, 275 (6th Cir.1986). It is undisputed that, at the time of trial, Reiner had retired from the BOP. A few weeks before trial, defense counsel had tracked Reiner to his vacation home in Arizona, and agreed to arrange for Friedman's counsel to depose Reiner by telephone. However, Friedman's counsel eventually decided not to take the deposition, and it was canceled. Defense counsel confirmed by letter the names listed on Friedman's trial witness list, which did not include Reiner. After the trial began, Friedman requested that Reiner be made available to testify, but at that time, Reiner could not be reached. His phone in Arizona had been disconnected. Furthermore, messages were left at

his permanent home in Minnesota, asking him to contact defense counsel, but he did not respond. The record clearly reflects that Reiner was not within the defendants' employ or control at the time of trial. Hence, the trial court did not abuse its discretion when it instructed the defense to report to the court if Reiner made any contact with them, but declined to take further steps to require Reiner's appearance.

Finally, we conclude that the trial court did not err by not taking judicial notice of various medical "facts." This court reviews a district court's refusal to take judicial notice for an abuse of discretion. *Toth*, 306 F.3d at 349. The record before this court reflects no abuse of discretion in this case. *See* Fed.R.Evid. 201(b).

Accordingly, we affirm the district court's judgment. Rule 34(j)(2)(C), Rules of the Sixth Circuit.