Joe WHITE, et al., Plaintiffs,

v.

CHICAGO PNEUMATIC TOOL
COMPANY, Defendant.

Nos. CV 496–159 through CV 496–165.

United States District Court,
S.D. Georgia,
Savannah Division.

Jan. 30, 1998.

Richard H. Middleton, Jr., Mark A. Tate, Middleton & Mixson, P.C., Savannah, GA, Eugene C. Brooks, IV, Wisenbaker & Brooks, Savannah, GA, for plaintiffs.

Joseph A. Mulherin, III, Roy E. Paul, Bouhan, Williams & Levy, Savannah, GA, Jane L. Peeples, Bouhan, Williams & Levy, Savannah, GA, Edwin D. Robb, Jr., Savannah, GA, John A. Childers, Brian C. Fetzer, Johnson & Bell, Ltd., Chicago, IL, for defendant.

### ORDER

NANGLE, District Judge.

Before the Court are the motions: (1) by defendant to bar the testimony of Dr. Peter Pelmear; (2) by defendant for summary judgment on proximate cause; (3) by defendant for summary judgment on feasible alternative design; (4) by defendant for summary judgment on duty to warn; (5) by plaintiff to exclude the testimony of Dr. Kreifeldt; and (6) by plaintiff to exclude evidence related to several defenses. For the reasons stated below, all said motions will be denied.

### I. Motion to Bar Testimony of Dr. Pelmear

Defendant has moved to exclude the testimony of plaintiffs' expert witness, Dr. Pelmear, who opines that vibration causes carpal tunnel syndrome and that there is an independent neurological component of hand-arm vibration syndrome. Defendant claims that there is no scientific basis for Dr. Pelmear's opinion. This Court held a *Daubert* hearing on November 11 and 13, 1997 to determine the admissibility of Dr. Pelmear's testimony.

In its order of July 14, 1997, this Court directed the parties to focus their testimony on the following questions relating to the scientific validity of Dr. Pelmear's opinions:

*Vibration–Carpal Tunnel Syndrome Relationship*

1. Whether Dr. Pelmear's theory that vibration causes carpal tunnel syndrome is generally accepted in the scientific community;

2. Whether this theory has been subjected to peer review and publication;

3. Whether this theory can and has been tested, *i.e.*, can vibration be isolated as the cause, and, if so, has it been?;

4. What is the known or potential rate of error of any study isolating vibration as a cause. If vibration cannot be and/or has not been isolated, how accurately can the studies which are relied upon determine that vibration is a risk factor for carpal tunnel syndrome?;

5. Are the rates of error and/or accuracy in # 4 acceptable?;

6. If no studies have been done on the use of pneumatic tools and their relation to carpal tunnel syndrome are there "good grounds" to extrapolate the results of the studies in existence to the facts of this case?

*The Existence of Hand–Arm Vibrations Syndrome Without Blanching*

1. Whether Dr. Pelmear's theory that hand-arm vibration syndrome may exist without blanching is generally accepted in the scientific community;

2. Whether this theory has been subjected to peer review and publication;

3. Whether this theory can be and has been tested, *i.e.*, have there been studies which found the existence of hand-arm vibration syndrome without blanching of the fingers?;

4. What is the known or potential rate of error for any such study?;

5. Without the existence of blanching, in what other ways can a doctor determine that hand-arm vibration syndrome exists;

6. What is the known or potential rate of error for misdiagnosis if blanching of the fingers does not exist?;

7. Whether there are non-plaintiffs who have exhibited this disorder of hand-arm vibration syndrome without blanching of the fingers.

## A. The Expert Witnesses

The plaintiffs called two expert witnesses, Dr. William Wessinger, an orthopedic surgeon from Savannah, Georgia and Dr. Fredric Gerr, an epidemiologist from Emory University. The defense called Dr. Nortin Hadler, an industrial rheumatologist from the University of North Carolina. All of the experts impressed this Court as highly qualified and well-respected in their fields of expertise.

## B. Findings of Fact

The following evidence in this part "B" is adopted as findings of fact in the *Daubert* hearing.

*Vibration–Carpal Tunnel Syndrome Relationship*

1. There is significant evidence that it is generally accepted in the scientific community that vibration can cause carpal tunnel syndrome. For example, in 1997, the National Institute for Occupational Safety and Health ("NIOSH"), in its survey of the scientific evidence on the issue, stated that "there is evidence supporting an association between exposure to vibration and CTS." NIOSH, *Musculoskeletal Disorders and Workplace Factors*, p. 5a–27 (1997). The statement "evidence supporting an association" is defined in the NIOSH study to mean "[s]ome convincing epidemiologic evidence exists for a causal relationship using the epidemiologic criteria of causality for intense and/or long-duration exposure to a specific risk factor and [a musculoskeletal disorder]. A positive relationship has been observed between exposure to the risk factor and the [musculoskeletal disorder] in studies in which chance, bias or confounding are not the likely explanation." NIOSH, *Musculoskeletal Disorders and Workplace Factors*, pp. 1–14 (1997).

2. Dr. Hadler points out that most of the studies on which plaintiff relies to prove a vibration-carpal tunnel syndrome relationship contain some flaw. (Transcript of *Daubert* hearing, November 11, 1997, at 30–49 (hereinafter "Tr. 1")). However, Dr. Gerr testified that no perfect studies exist, and that a flaw does not necessarily invalidate a study; rather, the literature as a whole supports the contention that vibration causes carpal tunnel syndrome. (Transcript of *Daubert* hearing, November 13, 1997, at 17–18 (hereinafter "Tr. 2")).

3. The theory that vibration causes carpal tunnel syndrome has repeatedly been the subject of articles in peer-reviewed publications, as shown by the voluminous exhibits submitted in this hearing.

4. Vibration has not been isolated as a causal factor in carpal tunnel syndrome. It is extremely difficult to separate vibration from repetition and force in the use of vibrating tools. (Tr. 2 at 88.)

5. The "gold standard" for diagnosis of carpal tunnel syndrome is electromyography, or nerve conductivity tests. Other, less accurate, diagnostic tests are also used, such as the Tinel's sign and Phalen's sign tests. (Tr. 2 at 25, 130–31.)

*Hand–Arm Vibration Syndrome*

1. There is no completely objective test to evaluate the existence of numbness and tingling in the hands and arms. (Tr. 1 at 50–51.)

2. Hand-arm vibration syndrome is characterized by changes in the vascular and sensorineural processes of the hands and arms, particularly when the extremities are subjected to cold temperatures. NIOSH, *Criteria for a Recommended Standard—Occupational Exposure to Hand–Arm Vibration* 38–39, 41 (1989).

3. The Taylor–Pelmear scale describing stages of HAVS was introduced in 1975. The staging system used a single numerical grade for vascular changes and a designation for whether the person suffered from sensorineural symptoms. The Taylor–Pelmear scale did not specifically distinguish between vascular and sensorineural functions. In 1986 the classification of the stages of HAVS was revised (the Stockholm scale) to reflect the concept that neural and vascular components of HAVS are distinct entities that may progress independently of each other. NIOSH, *Criteria for a Recommended Standard—Occupational Exposure to Hand–Arm Vibration* 31–35 (1989).

4. Several scientific articles have demonstrated that vibration-exposed individuals

may suffer from the sensorineural symptoms of HAVS without blanching, particularly in warm climates. (Tr. 2 at 51–62.)

5. Dr. Wessinger testified that he has a vibration-exposed patient who has the sensorineural symptoms of HAVS without blanching, and that the patient is not, to his knowledge, a plaintiff in a lawsuit involving HAVS. (Tr. 1 at 154.)

### C. Conclusions of Law

#### 1. The *Daubert* Analysis

■ The *Daubert* test exists in order to ensure that only scientifically reliable evidence is admitted into evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597–98, 113 S.Ct. 2786, 125 L.Ed.2d 469. The determination of whether expert testimony is admissible into evidence is a preliminary question for the Court under F.R.E. 104(a). *Daubert,* 509 U.S. at 592 (1993). The proponents of the evidence have the burden of proving admissibility of the testimony by a preponderance of the evidence. *Id.* at 592 n. 10. In order to prove admissibility of scientific evidence, the proponent must show that the proffered evidence is "(1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* at 592–93. In order to satisfy the *Daubert* test a proponent must show that the testimony is based on methodologically sound scientific evidence and that it advances a material issue in the case. *Id.* at 597.

*Daubert* lists several factors to assist in the determination of whether evidence is scientifically reliable:

(1) Whether the theory or technique employed by the expert is generally accepted in the scientific community;

(2) Whether the theory has been subject to peer review and publication;

(3) Whether the theory can and has been tested;

(4) Whether the known or potential rate of error is acceptable.

*Id.* at 592–95.

#### 2. Plaintiffs Have Proved the Admissibility of Dr. Pelmear's Testimony

All of the expert witnesses in this *Daubert* hearing were highly qualified and testified in a credible manner. However, this Court is satisfied that plaintiffs' expert evidence relating to the existence of a causal relationship between vibration and carpal tunnel syndrome and to the existence of an independent neurological component of HAVS raises a valid jury question.

■ The theory that vibration causes carpal tunnel syndrome has been subjected to numerous scientifically valid tests. Defendant's expert may point out flaws in individual studies, but the evidence as a whole supports the admissibility of evidence that vibration causes CTS. Recent independent government studies support this conclusion. This Court finds that the plaintiffs have met their burden and shown by a preponderance of the evidence the admissibility of Dr. Pelmear's opinion that vibration causes carpal tunnel syndrome.

■ Likewise, Plaintiffs have met their burden and shown the admissibility of Dr. Pelmear's opinion that there is an independent neurological component. The revision of the commonly used rating scale for HAVS to include sensorineural changes independently from vascular changes supports this contention, as does independent government evaluation. Accordingly, this Court finds that the plaintiffs have shown by a preponderance of the evidence the admissibility of Dr. Pelmear's opinion that there exists an independent sensorineural component of HAVS.

### II. Motions for Summary Judgment

#### A. Proximate Cause

■ Since the testimony of Dr. Pelmear is admissible, there exists a significant question of fact regarding causation in this case. Accordingly, the motion for summary judgment on proximate cause will be denied.

#### B. Feasible Alternative Design

After consideration of the motion for summary judgment on feasible alternative design, the motion will be denied.

### C. Duty to Warn

After consideration of the motion for summary judgment on duty to warn, the motion will be denied.

### III. Motion to Bar Testimony of Dr. Kreifeldt

Dr. Kreifeldt is an expert on warnings. Defendant's motion for summary judgment on the issue of warnings will be denied, therefore plaintiffs motion to bar Dr. Kreifeldt's testimony is moot. Insofar as the motion might have been intended to bar Dr. Kreifeldt's testimony at trial, the motion is denied as untimely.

### IV. Motion in Limine re Defenses

Plaintiffs' motion in limine seeks to prevent defendant from presenting evidence on the defenses of: (1) misuse of tools; (2) assumption of risk; (3) contributory negligence; (4) intervening cause by employer; and (5) intervening cause by other exposure. In essence, plaintiffs' motion seeks to strike several defenses that are usually within the purview of the jury. Based on its present knowledge concerning these defenses, this Court will allow the jury to consider the defenses on their merits. Accordingly,

IT IS HEREBY ORDERED that defendant's motion to bar the testimony of Dr. Peter Pelmear be and is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment on the issue of proximate cause be and is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment on the issue of feasible alternative design be and is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment on the issue of duty to warn be and is denied.

IT IS FURTHER ORDERED that plaintiff's motion to bar the testimony of Dr. Kreifeldt be and is denied.

IT IS FURTHER ORDERED that plaintiff's motion in limine to strike defenses be and is denied.