**James W. PRATER, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION,**
**Defendant.**

**No. 3:02CV7530.**

United States District Court,
N.D. Ohio,
Western Division.

July 16, 2003.

David L. Lockard, Philadelphia, PA, Erwin J. Leizerman, Law Office of E.J. Leizerman, Toledo, OH, for James W. Prater, Plaintiff.

David A. Damico, Burns, White & Hickton, Angela Y. Allen, Burns, White & Hickton, T.H. Lyda, Burns, White & Hick-

ton, Pittsburgh, PA, for Consolidated Rail Corporation, CSX Transportation, Inc., Defendants.

## ORDER

CARR, District Judge.

This is an FELA case in which the plaintiff claims to have incurred a variety musculoskeletal injuries as a result of repetitive stresses while working as a carman for Conrail and its successor, CSX Transportation.

Pending are a motion to reconsider and nine motions in limine filed by the defendant and plaintiff's motion in limine regarding collateral source benefits. The following sets forth my rulings on those motions.

> **1. Defendant's motion to reconsider the order granting plaintiff's motion in limine to exclude testimony of defendant's expert Dr. Howard Sandler (Doc. 30).**

Defendant desires to have Dr. Howard Sandler testify on issues relating to occupational medicine, including, inter alia, "causation analysis." It seeks reconsideration of my ruling granting plaintiff's motion to exclude such testimony. That ruling stated, in part:

> Though the record in this case shows that other courts have allowed Dr. Sandler to give opinion testimony in many other cases on a variety of occupational medicine issues, it does not show how Dr. Sandler knows what he is talking about *in this case* when he opines that "there is no indication that Mr. Prater's reported hand, shoulder and neck symptoms are related to his railroad employment." *Id.* Exh. D at 28.

> \* \* \* \* \* \*

> Otherwise, the record is largely silent about where and how Dr. Sandler may have gained the basic learning essential to testify about such issues in this case.

Neither the titles nor the contents of his speeches and legislative testimony have been made known to the court. While a handful of his articles, at least from a reading of their titles, may relate to ergonomics and the musculoskeletal system, there is nothing to show that those articles manifest specialized knowledge about the subjects as to which his testimony would be given in this case.

> Thus, while it is clear that many other courts have found Dr. Sandler to be qualified to testify on a variety of issues, including, apparently, the effect of repetitive trauma on a worker's hands, shoulder, neck, and back, the record in this case does not show why that was so.

> \* \* \* \* \* \*

> I reach this conclusion on the failure of proof in this case with regard to the witness's knowledge about the subjects as to which he was to be called to testify.

(Doc. 16 at 4).

Defendant contends that I did not properly consider various aspects of Dr. Sandler's background, and submits additional materials which it contends compel a different result than that reached on initial consideration of plaintiff's motion in limine.

■ I decline to consider materials that were not provided with the defendant's original opposition to the motion in limine. I decline, as well, to grant defendant's motion to take further evidence and hear additional argument with regard to Dr. Sandler's qualifications: pending is a motion for reconsideration, not the issue of Dr. Sandler's qualifications *ab initio.*

■ For several years, I have taken a firm and negative view towards motions to reconsider, and have sought to make that view known. *See McConocha v. Blue Cross and Blue Shield Mut. of Ohio,* 930 F.Supp. 1182, 1184 (N.D.Ohio1996). My efforts to curb the instances in which par-

ties seek reconsideration not, apparently, having diminished the willingness of counsel to file such motions, I have adopted, and likewise sought to publicize, the routine imposition of sanctions as deterrent to motions for reconsideration. *See, e.g. The Andersons, Inc. v. Consol, Inc.,* 221 F.Supp.2d 810, 812 (N.D.Ohio 2002); *Miller v. Norfolk Southern Rwy. Co.,* 208 F.Supp.2d 851, 852–53 (N.D.Ohio 2002).

Defendant does not deny that plaintiff challenged Dr. Sandler's qualifications and his methodology, or that it acknowledged that the motion was "decisional" (i.e., ready to be decided, without the need for further submissions) at a pretrial conference. Nonetheless, it asks me to consider additional information and reach a different result.

I decline to do so: I considered, and I believe thoroughly and carefully so, the materials and arguments submitted by the parties. I was fully aware that other courts—*all* other courts, I assume—that have been asked to accept Dr. Sandler have done so. But then, they had before them what they had before them, which may have included more information about and less vigorous or persuasive challenge to Dr. Sandler's qualifications than was before me. In any event, their conclusions do not foreclose my independent review and assessment.

■ Unable to deny that it is asking me to consider material that could have been submitted earlier, and revisit arguments that I have already considered in detail, defendant relies principally on the third ground on which a motion to reconsider can be granted: namely, manifest injustice.

■ I assume that defendant's ability to prevail will be affected adversely if Dr. Sandler does not testify. His version of the truth will be kept from the jury. But that does not mean that any resulting injustice is manifest. "Manifest injustice" requires a showing that an order "was plainly wrong and resulted in substantial prejudice to the aggrieved party." *Mack v. Great Atlantic and Pacific Tea Co., Inc.,* 871 F.2d 179, 186 (1st Cir.1989).

I am not persuaded that my order was wrong at all, much less plainly so. I am also not persuaded that to deny the request to reconsider that order results in injustice to the defendant, much less manifestly so. It could have presented everything that it now wants me to consider before I undertook to reach my initial decision. Not having done so, it cannot properly complain about being treated unjustly by my refusal to plow again a field I have already tilled.

■ I also decline to certify this decision for interlocutory appeal: defendant has not contended that my ruling leaves it bereft of the ability to defend. It simply cannot call one witness among many, and it cannot do so because it failed in this case to show that that witness was qualified to render an opinion on an ultimate issue under Fed.R.Civ.P. 702. Contrary to defendant's contention, my ruling does not relate to a "controlling question of law as to which there is substantial ground for a difference of opinion." 28 U.S.C. § 1292(b).

The defendant's motion to reconsider will be overruled.

### 2. Defendant's motion in limine to exclude ANSI or other standards (Doc. 18).

Defendant seeks to exclude testimony about ANSI voluntary ergonomics standards, and OSHA standards which OSHA considered, but did not adopt. Plaintiff's response to this contention references only "promulgated" standards.

■ First, with regard to OSHA standards: breach of an OSHA standard may,

under some circumstances, constitute negligence per se, while under other circumstances, breach of an OSHA standard is evidence of negligence, but is not conclusive of the issue. *Ellis v. Chase Communications, Inc.*, 63 F.3d 473, 476–77 (6th Cir.1995). In the context of an FELA case, other circuits have held that breach of an OSHA regulation constitutes evidence of negligence. *Ries v. Nat'l RR Passenger Corp.*, 960 F.2d 1156, 1164 (3d Cir.1992) ("violation of the OSHA regulation was properly admissible as evidence of Amtrak's negligence"). Evidence of otherwise pertinent regulations promulgated by OSHA is, accordingly, admissible.

Other courts have approved use by a plaintiff in an FELA case of ANSI standards. *Miller v. Chicago and North Western Transp. Co.*, 925 F.Supp. 583, 590 (N.D.Ill.1996). The exact nature and status of the ANSI standard(s) at issue is not clear from the briefs. A ruling on their admissibility will be held in abeyance until trial.

### 3. Defendant's motion in limine to exclude evidence of causation re. plaintiff's knee injury (Doc. 19).

■ Defendant claims that any alleged injury to plaintiff's knee is not a part of this suit, and that plaintiff's counsel stipulated to that fact during plaintiff's deposition. Plaintiff points out that defendant has been provided with medical reports referencing his knee and allegation that it was injured as a result of his work. In addition, defendant's independent medical examiner included plaintiff's complaints of knee impairment in his report, and expressed his opinion that there was no causal connection between plaintiff's complaints and his work.

This is not enough to bring issues about any injury to plaintiff's knee into this suit. Defendant's motion in limine to exclude evidence of a relationship between plaintiff's knee impairment, if any, and his work shall be granted.

### 4. Defendant's motion in limine to exclude tape labeled "railroad work" (Doc. 20).

■ Defendant seeks to exclude a videotape purporting to show others performing the work done by the plaintiff. Defendant contends the tape shows "general track work," rather than performance of opening automobile carrier doors and related activities.

Plaintiff asserts that the tape, in fact, shows the work that he was required to do. If so, and if such foundation is presented, the tape is admissible. In light of plaintiff's representations about the nature of the tape and its contents, defendant's motion in limine will be overruled, provided an adequate foundation is presented at trial.

### 5. Defendant's motion in limine to exclude evidence of plaintiff's reimbursed medical bills (Doc. 21).

Plaintiff does not oppose this motion, to the extent that it relates solely to past medical bills paid by a third party, and, provided further, that such third party is not asserting a lien against plaintiff's recovery in this case, if any.

■ Plaintiff disputes any contention that he cannot introduce evidence of anticipated future medical expenses. He is correct, and is entitled to show future damages, provided they are probable. *Taylor v. Consolidated Rail Corp.*, 114 F.3d 1189 (Table, Text in WESTLAW), 1997 WL 321142, *3 (6th Cir.(Unpublished Disposition)) ("In FELA cases, future damages can be recovered only if they are 'probable.'") (*citing Marchica v. Long Island R.R. Co.*, 31 F.3d 1197, 1207 (2d Cir.1994) ("'A FELA plaintiff is entitled to recover for all past, present and probable future

harm attributable to the defendant's tortious conduct' ")). Defendant's contention that future medical expenses must be "certain" is not well taken.

Defendant's motion shall be granted with regard to third party medical payments as to which no lien has been filed, and denied with regard to evidence of future medical expenses.

### 6. Defendant's motion in limine re. testimony by co-workers (Doc. 22).

Plaintiff desires to introduce testimony by some of his former co-workers about their complaints about their working conditions to the railway's managers. Plaintiff contends that any such testimony is not relevant, and, in any event, should be excluded under Fed.R.Evid. 403.

■ Under Fed.R.Evid. 404(b) evidence of other acts is admissible to prove, inter alia, knowledge. To the extent that plaintiff's co-workers notified the railroad's managers that they had symptoms similar to those experienced by the plaintiff, they will be permitted to testify. Their testimony must, however, be predicated on a showing that the witnesses performed the same work as the plaintiff and will be limited to a brief recitation of the symptoms they experienced and the notice they gave to the railroad of such symptoms.

Such testimony is relevant only to the railroad's knowledge that the work was producing certain symptoms. Testimony by the witnesses that they have been diagnosed with injuries similar to the injuries giving rise to plaintiff's claims will not be admissible.

Subject to the limitations stated herein, defendant's motion in limine shall be overruled.

### 7. Defendant's omnibus motion in limine (Doc. 23).

■ This motion calls for an advisory ruling as to issues that may not arise. It will be overruled, without prejudice to defendant's right to challenge specific statements or arguments.

### 8. Defendant's motion in limine to exclude medical reports regarding causation and testimony by plaintiff's treating physician (Doc. 24).

Defendant contends that one of plaintiff's treating physicians, Dr. Reveal, should not be permitted to testify about his diagnosis that plaintiff's carpal tunnel syndrome was caused by his work on the railroad.

To the extent that defendant objects to Dr. Reveal's reliance, in part, on the "railroad work" videotape, that objection is overcome in light of plaintiff's representations that the tape accurately depicts others performing the tasks that he was require to perform. If that foundation is established, Dr. Reveal can use that tape as one of the bases for his opinion.

■ As a treating physician, Dr. Reveal can give and explain his diagnosis of the plaintiff's condition and his view of its cause. The objections asserted by the defendant to Dr. Reveal's qualifications to give that opinion go to its weight, not its admissibility.

As stated in *Hardyman v. Norfolk & Western Railway Co.,* 243 F.3d 255, 268 (6th Cir.2001), "nothing would preclude Plaintiff's treating physicians from testifying that Plaintiff did indeed have CTS and as to what they have found, through their experience, generally has caused their patients to contract CTS, i.e., what they have determined to be the diagnostic cause and effect."

Defendant's motion in limine to exclude testimony by Dr. Reveal shall be denied.

9. *Defendant's motion in limine to exclude "cost of quality" documents (Doc. 25).*

 Conrail, the corporate predecessor to CSX Transportation, undertook to evaluate the extent to which claims of repetitive stress injuries should be met with a corporate ergonomics program. During the course of telephone discovery conferences, I have ruled that documents created in the course of studying the frequency of repetitive stress complaints, including those created by or at the direction of Conrail's counsel, were not covered by the attorney-client privilege or work product doctrine. To the extent defendant renews those objections, they are overruled—the lawyers were doing business work, not legal work, albeit in response to lawsuits and the risk of lawsuits.

 Defendant seeks to exclude documents relating to Conrail's study of repetitive stress injuries. To the extent that those documents show the extent of complaints by carmen, those documents are admissible under Rule 404(b). There need not be a correlation between the date of the plaintiff's onset and that of other complainants—what matters is notice to and knowledge on the part of Conrail of allegations that the work was causing injury to carmen.

The work being done need not be shown to have been the same—just similar. Notice need not have been given of the precise risk—notice of complaints about musculoskeletal injuries in the same general class of occupations suffices.

To the extent that defendant seeks to keep its attorneys off the stand on the basis of privilege or work product doctrine, it cannot do so. They were giving business, not legal advice.

The fact that plaintiff did not complain before Conrail was merged into CSX Transportation is immaterial. Knowledge on the part of CSX's predecessor can be imputed to CSX.

Defendant's motion in limine to exclude cost of quality documents and related testimony shall be denied.

10. *Defendant's motion in limine to bar testimony by plaintiff's expert Dr. Gary Herrin (Doc. 26).*

 Plaintiff desires to call Gary Herrin, Ph.D., Assistant Dean of the University of Michigan's School of Engineering, and Professor of Industrial and Applications Engineering, to give his opinion that:

the carman activities of opening and closing tri-level rail car doors creates significant mechanical trauma and stress to the shoulders, elbows, wrists, and lower back. It is expected that such tasks will create sufficient trauma to damage the soft tissues of the shoulder, elbow, and wrist joints and to lead to cumulative trauma injuries, such as those sustained by ... Mr. Prater, .... The deposition testimony of the railroad supervisor, Mr. Headings, indicates that the railroad managers knew that these risks of overexertion and cumulative trauma injury were present and foreseeable. The analysis contained herein supports that view. The stresses exceed all recommended guidelines and could be corrected with appropriate engineering and administrative controls.

(Doc. 32, Exh. 2, at 5).

Defendant seeks to exclude Prof. Herrin's testimony on the basis that he is not qualified to render the opinion that he proposes to offer, and that, in any event, his opinion is not reliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Among other cases, defendant points to *Stasior v. Nat'l R.R. Passenger Corp.*, 19 F.Supp.2d 835 (N.D.Il.1998), in which the defendant's motion in limine to

exclude testimony by Prof. Herrin was granted.

Though not noted by the defendant in its briefs, the court in *Stasior* had little difficulty in finding Prof. Herrin qualified to testify as an expert in the field of ergonomics. To be sure, that court's finding is not binding on this court: but Prof. Herrin's curriculum vitae, which shows his extensive training, experience, grants, peer-reviewed publications, and presentations at professional meetings and his standing in the field of ergonomics (*Id.*, Exh. 7), amply and convincingly supports that finding.[1]

The court in *Stasior* concluded that opinions in that case, though offered by a qualified expert, did not meet the reliability requirements of *Daubert.* Other courts have reached the same conclusion with regard to testimony by other ergonomic experts in FELA cases involving claims of repetitive stress injuries. *See Pretter v. Metro North Commuter R. Co.,* 206 F.Supp.2d 601, 602–03 (S.D.N.Y.2002); *Magdaleno v. Burlington N. R. Co.,* 5 F.Supp.2d 899 (D.Col.1998) (excluding expert causation testimony as conclusory and unsupported by scientific evidence); *Dukes v. Illinois Cent. R.R. Co.,* 934 F.Supp. 939 (N.D.Ill.1996) (excluding expert causation testimony for lack of objective methodology); *Bennett v. PRC Pub. Sector, Inc.,* 931 F.Supp. 484 (S.D.Tex.1996) (same).

The circumstances in this case differ from those in the foregoing cases. In *Stasior,* the plaintiff had a low-force, low-repetition job, rather than a job that involved significant forces and frequent repetitions, and there was no basis on which an expert could show a correlation between such jobs are and carpal tunnel syndrome. 19 F.Supp.2d at 841. In that case, unlike this case, there was no quantitative data about the plaintiff's working conditions.. *See id.* at 852.

In Magdaleno, the expert, unlike Dr. Herrin in this case, did not conduct an on-site analysis of the worksite. *See* 5 F.Supp.2d at 905. In this case, Dr. Herrin performed independent studies and examined the pertinent research before coming to his conclusions; in *Dukes,* neither occurred. 934 F.Supp. at 948.

The opinions to be offered by Dr. Herrin in this case differ, moreover, from those proffered in *Stasior.* As the court noted in that case, Dr. Herrin was to testify that the particular working conditions caused the plaintiff to develop carpal tunnel syndrome. 19 F.Supp.2d at 851. Here, in contrast, Dr. Herrin will testify that "carman activities of opening and closing tri-level rail car doors creates significant mechanical trauma and stress to the shoulders, elbows, wrists, and lower back. It is expected that such tasks will create sufficient trauma to damage the soft tissues of the shoulder, elbow, and wrist joints and to lead to cumulative trauma injuries, such as those sustained by ... Mr. Prater".

Testimony that circumstances may give rise to a certain result differs from testimony that those circumstances gave rise to that result. That testimony is relevant and admissible, while leaving for the jury the ultimate question of causation in the particular case. *See id.* (noting distinction between opinions regarding general causation and opinions of specific causation); *see also White v. Chicago Pneumatic Tool Co.,* 994 F.Supp. 1478, 1480–81 (S.D.Ga.1998) (allowing expert evidence relating to the

---

1. Plaintiff points out that Prof. Herrin has twice previously been found qualified, and has given his opinions on ergonomic issues in trials before me. (Doc. 32, at 32 n. 11). While I have no recollection of those instances, I am confident that the challenge in this case to his testimony is far more extensive and vigorous than the challenges, if any, to his testimony in those cases.

existence of a causal relationship between vibration and carpal tunnel syndrome).

That Prof. Herrin may testify about factors in plaintiff's workplace that could give rise to the injuries claimed to have been incurred by the plaintiff is further supported by the Sixth Circuit's decision in *Hardyman*. In that case, the court held that expert causation testimony by two experts—one in the field of occupational and environmental medicine, the other in the field of ergonomics—based on the use of differential diagnosis, was admissible in plaintiff's carpal tunnel FELA suit. 243 F.3d at 267.

Differential diagnosis, the court stated, "is defined as: [t]he method by which a physician determines what disease process caused a patient's symptoms. The physician considers all relevant potential causes of the symptoms and then eliminates alternative causes based on a physical examination, clinical tests, and a thorough case history." *Id.* at 260. This approach, the court stated, "is not a method which lends itself to establishing a 'direct link'" between an activity and an injury. Rather, it is a method by which "a physician 'considers all relevant potential causes of the symptoms and then eliminates alternative causes....'" *Id.* at 262 (citing FEDERAL JUDICIAL CENTER, Reference Manual on Scientific Evidence 214 (1994)). In *Hardyman* the expert's assessment "was limited to an evaluation of the Plaintiff himself, which goes to the heart of differential diagnosis." *Id.* at 257.

In this case, Prof. Herrin, as he stated in his deposition, took a different approach: instead of evaluating the plaintiff, he evaluated the job. (Doc. 32, Exh. 6, at 63–64). That evaluation, moreover, provided an adequate basis for him to conclude, in light of his training, experience, and expertise, that: 1) "the carman activities of opening and closing tri-level rail car doors creates significant mechanical trau-

ma and stress to the shoulders, elbows, wrists, and lower back"; 2) "[i]t is expected that such tasks will create sufficient trauma to damage the soft tissues of the shoulder, elbow, and wrist joints"; and 3) such will "lead to cumulative trauma injuries, such as those sustained by ... Mr. Prater".

Prof. Herrin does not opine that performance of the described tasks caused plaintiff's injuries: he states, rather, that performance of the tasks observed could result in injuries to a carman's musculoskeletal system. In effect, he lays a foundation for expert medical testimony, provided by Dr. Reveal, that connects the plaintiff's work with his injuries in light of Prof. Herrin's testimony that certain conditions can adversely impact a carman's musculoskeletal system.

Viewed in this manner, Prof. Herrin's testimony, moreover, finds specific endorsement in *Hardyman*, where the court stated that even if an expert cannot render an opinion on causation, "nothing would preclude expert testimony as to the generally accepted risk factors for the development of CTS, the number of risk factors and the degree to which each was present in Plaintiff's job, and the specific tasks required in each of Plaintiff's job requirements during the course of his employment". *Id.* at 269. This is what Prof. Herrin will be telling the jury, and his expertise, observations, and *Hardyman* make clear that he can do so.

The flaws perceived by the defendant in Prof. Herrin's methodology go to weight, not admissibility.

Defendant's motion to exclude Dr. Herrin's testimony will be overruled.

**11. Plaintiff's motion in limine regarding collateral benefits (Doc. 28).**

Plaintiff seeks to exclude "all testimony" relating to any collateral source including

retirement, sickness benefits, and disability benefits pursuant to *Eichel v. N.Y. Central R. Co.*, 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963). In *Eichel* the Supreme Court held that evidence of collateral source benefits is generally not admissible in FELA cases because such evidence "is readily subject to misuse by a jury." 375 U.S. at 255, 84 S.Ct. 316. The Sixth Circuit has noted the "strong policy against the use of such collateral source evidence in FELA and analogous Jones Act-maritime law seamen's cases." *Wilcox v. Clinchfield R. Co.*, 747 F.2d 1059, 1062 (6th Cir.1984).

▪ Defendant argues that it should be able to tell the jury that the plaintiff is receiving Railroad Retirement Benefits (RRB) because, in doing so, plaintiff has interjected the issue of his motive for not returning to work into the case. I disagree: if the jury finds liability, the issue for the jury is whether the plaintiff is fit, despite his injuries, to return to work. If so, his receipt of RRB benefits has no bearing on his damages, because he is medically fit to go back to work, regardless of the RRB payments; if not, such benefits cannot be offset against plaintiff's lost wages under *Eichel*, 375 U.S. at 254, 84 S.Ct. 316; *accord, Green v. Denver & Rio Grande Western R. Co.*, 59 F.3d 1029, 1032 (10th Cir.1995).

▪ Defendant also contends that the jury must compute the plaintiff's lost wages on an after-, rather than a pre-tax basis. That contention is well-taken. *Norfolk & W. Ry. Co. v. Liepelt*, 444 U.S. 490, 493, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980) (rejecting the contention that "introduction of evidence describing a decedent's estimated after-tax earnings is too speculative or complex for a jury."). Plaintiff shall, accordingly, testify as to his federal, state, and, if any, local income tax bracket for three years prior to his cessation of work, and the jury will be instructed to use

the average of those three years to compute plaintiff's after-tax wage loss.

Plaintiff's motion in limine shall be granted, except insofar as his claim for lost wages shall be decided on the basis of an after-, rather than a pre-tax basis.

### Conclusion

In light of the foregoing, it is

ORDERED THAT:

1. Defendant's motion to reconsider the order excluding testimony by Dr. Howard Sandler (Doc. 30) be, and the same hereby is denied;

2. Defendant's motion in limine to exclude OSHA and ANSI or other standards (Doc. 18) be, and the same hereby is denied with regard to promulgated and pertinent OSHA standards, and held in abeyance with regard to ANSI standards;

3. Defendant's motion in limine to exclude evidence of causation re. plaintiff's knee injury (Doc. 19) be, and the same hereby is granted;

4. Defendant's motion in limine to exclude the tape labeled "railroad work" (Doc. 20) be, and the same hereby is denied, subject to presentation of an adequate foundation at trial;

5. Defendant's motion in limine to exclude evidence of plaintiff's reimbursed medical bills (Doc. 21), be, and the same hereby is granted regard to third party medical payments as to which no lien has been filed, and denied with regard to evidence of future medical expenses.

6. Defendant's motion in limine re. testimony by co-workers (Doc. 22) be, and the same hereby granted with regard to testimony that plain-

tiff's co-workers have been diagnosed with injuries similar to those claimed by plaintiff, and otherwise denied;

7. Defendant's omnibus motion in limine (Doc. 23) be, and the same hereby is denied, without prejudice;

8. Defendant's motion in limine to exclude medical reports regarding causation and testimony by plaintiff's treating physician (Doc. 24) be, and the same hereby is denied;

9. Defendant's motion in limine to excluse "cost of quality" documents (Doc. 25) be, and the same hereby is denied;

10. Defendant's motion in limine to bar testimony by plaintiff's expert Dr. Gary Herrin (Doc. 26) be, and the same hereby is denied;

11. Plaintiff's motion in limine regarding collateral benefits (Doc. 28) be, and the same hereby is denied with regard to the tax basis on which lost wages shall be computed, and otherwise denied.

So ordered.